82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steve WARNER, Defendant-Appellant.
 No. 94-1212.
 United States Court of Appeals, Sixth Circuit.
 April 9, 1996.
 
 Before: KENNEDY, WELLFORD and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Steve Warner appeals his convictions for conspiracy to distribute LSD, distribution of LSD, and aiding and abetting the distribution of LSD. Defendant argues that the District Court's improper admission of hearsay statements and material variances between the offense conduct alleged in the indictment and the proof offered at trial denied him a fair trial. For the following reasons, we AFFIRM the judgment of the District Court.
 
 I. Facts
 
 2
 In April 1993, a confidential informant ("CI") for the Drug Enforcement Agency ("DEA") contacted Dale Timm for the purpose of purchasing LSD. During the course of their negotiations, Timm identified the defendant, Steve Warner, as his supplier. The CI was unable to purchase drugs immediately from Timm because, according to Timm, defendant was waiting for his supplier to return from Florida with the drugs. Nonetheless, negotiations between Timm and the CI ultimately culminated in two separate purchases of narcotics.
 
 
 3
 On May 13, 1993, the CI and Timm went to defendant's trailer to purchase LSD. When they arrived, Timm entered the trailer alone, obtained the LSD from defendant, and then subsequently transferred it to the CI. Although the CI never met or saw the defendant during the course of his transaction, a DEA Special Agent observed defendant at his home before the CI and Timm arrived.
 
 
 4
 A second purchase of LSD was scheduled for July 1, 1993, at Timm's house. DEA agents gave the CI $910 in pre-recorded bills to effectuate that purchase. Timm gave the CI the LSD and later told him that he had given the money to defendant in exchange for the drugs. Again, the CI never met or saw the defendant during this transaction. However, a DEA Special Agent observed two individuals enter Timm's home on July 1 shortly before the CI arrived. Shortly after the CI left Timm's home, these two individuals left Timm's home in the car in which they had arrived.
 
 
 5
 Other surveillance agents pulled over and arrested these two individuals, one of whom was the defendant. Agents found the $910 in pre-recorded bills in defendant's shirt pocket. When asked whether that was the money he received from the sale of LSD in the house, defendant responded affirmatively according to one DEA agent, though defendant testified that this was incorrect.
 
 
 6
 Defendant was indicted on counts of conspiracy to distribute LSD, distribution of LSD, and aiding and abetting the distribution of LSD. A jury returned a verdict of guilty on all counts and the District Court sentenced defendant to a term of sixty months imprisonment followed by four years of supervised release.
 
 II. Discussion
 A. Co-conspirator Statements
 
 7
 Defendant's first argument is that the District Court improperly admitted Timm's pre-May 1993 out-of-court statements identifying defendant as his supplier as nonhearsay, co-conspirator statements pursuant to FED.R.EVID. 801(d)(2)(E). Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if "[t]he statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In order to admit a statement of a co-conspirator the government must establish (1) that a conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the co-conspirator's statements were made in furtherance of the conspiracy. United States v. Pierce, 62 F.3d 818, 827 (6th Cir.1995), cert. denied, 116 S.Ct. 965 (1996). We review these factual determinations for clear error and the legal question of whether the rule permitted the challenged statements to be received as nonhearsay de novo. United States v. Gessa, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc).
 
 
 8
 Defendant argues that because there was no evidence that either Warner or Timm had conspired and/or distributed LSD prior to May 1993, Timm's pre-May 1993 out-of-court statements identifying defendant as his supplier and referencing defendant's supplier could not have been made in furtherance of an already existing conspiracy; instead, defendant claims that these statements were made in attempt to create a conspiracy between Timm and the defendant.
 
 
 9
 We find defendant's argument to be without merit. Timm's out-of-court statements identifying defendant as his supplier and referencing defendant's supplier indicate an ongoing course of dealing between Timm and the defendant that predated May 1993. These statements clearly identified defendant as a participant, not a potential participant, in a conspiracy to distribute narcotics of which both Timm and defendant were already members. Moreover, we have repeatedly recognized that statements identifying a participant and his role in a conspiracy are made in furtherance of a conspiracy. See, e.g., United States v. Clark, 18 F.3d 1337, 1342 (6th Cir.), cert. denied, 115 S.Ct. 152 (1994); United States v. Hitow, 889 F.2d 1573, 1581 (6th Cir.1989). Therefore, we reject defendant's argument that these statements were made in an attempt to create a conspiracy rather than in furtherance of an already existing conspiracy.
 
 
 10
 However, as defendant indicates, co-conspirator out-of-court statements remain inadmissible without independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy. Pierce, 62 F.3d at 827. That evidence must be sufficient to overcome the suspected unreliability of out-of-court statements. Id.; Clark, 18 F.2d at 1342.
 
 
 11
 In this case, the government presented sufficient corroborating evidence to overcome the suspected unreliability of the out-of-court statements. Government witnesses testified that on May 12, 1993, Timm went to defendant's trailer to obtain LSD. In July, defendant was seen entering and exiting Timm's home both immediately before and immediately after Timm purchased LSD for the CI. Finally, when defendant was arrested he had the $910 in pre-recorded bills that the CI had given to Timm in exchange for the drugs. Even though these events did not take place until after April 1993, the District Court was not clearly erroneous in drawing the inference that Timm and the defendant had conspired to distribute LSD before they actually made a sale to the CI. The preponderance of the evidence indicated that a conspiracy existed at the time Timm identified defendant as his supplier and referenced defendant's supplier, that defendant was a member of the conspiracy, and that these statements were made in furtherance of the conspiracy.
 
 
 12
 We, therefore, find that the District Court did not err as a matter of fact or of law when it admitted Timm's out-of-court statements identifying defendant as his supplier and referencing defendant's supplier as nonhearsay, co-conspirator statements under FED.R.EVID. 801(d)(2)(E).
 
 B. Variance
 
 13
 Next, defendant argues that two fatal variances between the evidence introduced at trial and the offense conduct alleged in the indictment denied him a fair trial; he claims that (1) the indictment alleged a single conspiracy whereas the proof established multiple conspiracies; and (2) the indictment alleged a conspiracy beginning after May 1, 1993, whereas the evidence suggested a conspiracy prior to that date.
 
 
 14
 Defendant argues that the government's introduction of testimony suggesting that defendant would obtain drugs from an individual who would purchase the drugs in Florida tended to establish a multiple, not a single, conspiracy. We understand defendant's argument to mean that the government's proof tended to establish multiple conspiracies--one between Timm and defendant and one between defendant and his supplier--whereas the indictment alleged only a conspiracy between Timm and defendant, thus creating a variance. We find no such variance.
 
 
 15
 To prove the single conspiracy alleged in the indictment, the government had to show that Timm and the defendant agreed to distribute LSD. See United States v. Warner, 690 F.2d 545, 548-49 (6th Cir.1982). Conspiracies to distribute narcotics often involve numerous sales and resales and are thus commonly referred to as "chain" conspiracies. Id. at 549. The chain conspiracy is a single conspiracy even though each member of the conspiracy may not know every other member or each member may not be involved in all the activities of the conspiracy. Id.
 
 
 16
 In this case, the government's proof at trial supported a finding of a single conspiracy to distribute LSD. The proof tended to show, and the jury concluded, that defendant and Timm conspired to distribute LSD. The evidence also suggested that there were other members of the conspiracy who supplied defendant with LSD; the evidence suggested a chain conspiracy, which is a single conspiracy. Therefore, we conclude that there was no variance between the indictment and the proof at trial.
 
 
 17
 Defendant also argues that there was a variance between the dates set forth in the indictment and proof of activities and statements made before May 1993 that tended to establish defendant's involvement in a conspiracy before May 1993. Again, we find no such variance.
 
 Count one of the indictment alleges:
 
 18
 That on or about May, 1993, that being an approximate date, and continuing up to and including July 1, 1993, in the Eastern District of Michigan, Southern Division, STEVEN WARNER and DALE TIMM, defendants, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other to commit an offense against the United States, that is, to knowingly, intentionally and unlawfully distribute a controlled substance, namely, lysergic acid diethylamide (LSD), a Schedule I controlled substance, all in violation of 21 U.S.C. §§ 846(a)(1).
 
 
 19
 We find that the "on or about" and "approximate date" language of the indictment is broad enough to reach events of unspecified dates in April 1993. See United States v. Ford, 872 F.2d 1231, 1236 (6th Cir.1989) (holding that when an indictment uses "on or about" language regarding the date of the offense, no material variance occurs when the government establishes a date "reasonably near" that named in the indictment). Therefore, we conclude that there is no variance between the events alleged in the indictment and the proof offered at trial.
 
 III. Conclusion
 
 20
 For the reasons stated, we AFFIRM the decision of the District Court.