**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mychal MANNING, Defendant–Appellant.**

No. 96–1797.

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1998.

Decided April 17, 1998.

Richard J. O'Neill, Jonathan Epstein (argued and briefed), Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Patricia G. Blake (argued), Christopher P. Yates (briefed), Office of the U.S. Atty., Detroit, MI, for Plaintiff–Appellee.

Before: MARTIN, Chief Judge; CONTIE and DAUGHTREY, Circuit Judges.

## OPINION

CONTIE, Circuit Judge.

Defendant-appellant, Mychal Manning, appeals his conviction after a jury found him guilty of conspiracy to possess with intent to distribute and to distribute a controlled substance.

### I.

In Los Angeles, a person named Tony, acting on behalf of a DEA agent, asked George Gutierrez to find buyers to whom he could sell cocaine. On August 1, 1995, Gutierrez and Jose Oliveres went to Chicago on behalf of Tony to set up a fifteen kilogram cocaine deal with defendant Manning. Gutierrez and Oliveres met Manning on August 4, 1995 and discussed the deal with him. However, the customers failed to have sufficient funds for the purchase, and the transaction was not completed at that time.

After Gutierrez returned to Los Angeles, he spoke with defendant on the telephone about putting together a deal in Detroit. The agreement was for Tony to sell fifteen kilograms of cocaine to defendant in Detroit. Defendant instructed Gutierrez to "make the arrangements, set everything up, and give him a call when [Gutierrez] was in Detroit."

On September 7, 1995, Gutierrez and Tony were in Detroit to meet with defendant. Gutierrez checked into a Days Inn hotel room, which was paid for by Tony, and spoke several times on the telephone with defendant and with Tony. They agreed that Tony would supply defendant Manning with five kilograms of cocaine in Detroit and then deliver ten more to him in Chicago. They agreed that defendant would come to Detroit with the money to pay for five kilograms of cocaine.

On September 8, 1995, defendant drove from Chicago to Detroit in a rental car and met Gutierrez at the Days Inn off Middlebelt Road. This meeting was videotaped by the DEA, and the telephone conversations were monitored. On September 9, 1995, Gutierrez and defendant moved to another hotel where they shared a room. Later that day, defendant showed Gutierrez a shoe box in which he kept $84,000 in cash, which he had brought with him to pay for the cocaine.

On September 12, 1995, Gutierrez and defendant went back to the Days Inn in order to consummate the cocaine deal in which defendant was going to buy four kilograms of cocaine from Tony.[1] Defendant and Gutierrez had agreed that Gutierrez would handle the dealings with Tony. Therefore, defendant gave Gutierrez the money for the cocaine by putting a box of cash in a bag and placing the bag in the trunk of the rental car. Later, they drove to the Days Inn together to meet with Tony.

Once they arrived at the Days Inn, Gutierrez went into the hotel while defendant went into a nearby Denny's restaurant. A few minutes later, they both met again at the rental car and moved the vehicle to another parking space. They then got out of the car, opened the trunk, and removed the money, which Gutierrez took into the Days Inn. Defendant went to a restaurant near the Days Inn parking lot where he was arrested.

On October 11, 1995, a federal grand jury in the Eastern District of Michigan returned a one-count indictment charging defendant with conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1). After a jury trial, defendant was found guilty of Count One of the indictment. On May 30, 1996, the district court sentenced defendant to a 121–month term of imprisonment. Defendant timely submitted a notice of appeal on May 31, 1996.

## II.

At trial, defendant objected to the introduction of Exhibit 2, a Chicago Marriott Courtyard Hotel bill dated August 4, 1995, as evidence of a meeting between Gutierrez and defendant which had occurred on that date. Defendant also objected to the testimony of Gutierrez, who became a witness for the prosecution, about this meeting. Defendant argued that the indictment charged that he had participated in a drug conspiracy "from on or about September 6, 1995, and continuing thereafter up to and including September 12, 1995." Defendant objected to the hotel receipt and Gutierrez's testimony as evidence of an August 1995 meeting in Chicago between him and co-conspirators, because he contended that reference to such a meeting was outside the timeframe of the indictment and amounted to a constructive amendment of the indictment, or at least, to a fatal variance from the indictment.

The district court rejected this contention and gave a jury instruction to explain the meaning of the words "on or about" in the indictment. The district court ruled that the United States could present the evidence of the August 4, 1995 meeting because the indictment, which alleged that the conspiracy began "on or about September 6, 1995," was broad enough to encompass the events that had occurred one month earlier. In its final instructions to the jury, the district court told the jurors that, because the indictment alleged that the crime took place "on or

---

**1.** Defendant had only sufficient funds to pay for four kilograms of cocaine.

about" certain dates, the United States did not have to prove that the crimes happened on those exact dates, but that it had to prove that the crime happened reasonably close to those dates.

Defendant contends that the district court erred by allowing the introduction of the evidence of the August 4, 1995 meeting in Chicago and by instructing the jury as it did. Defendant alleges that the August 4, 1995 meeting was part of a separate drug conspiracy, one involving different actors, in a different jurisdiction, which took place one month prior to the events alleged in the indictment.[2] He argues that the submission of this evidence constituted a variance amounting to a "constructive amendment" of the indictment. Defendant alleges that this evidence was highly prejudicial to his defense, which was that he was "merely present" in Detroit, but that he had no knowledge of a drug conspiracy. Defendant alleges that the district court erred in failing to instruct the jury not to convict him based on evidence of "other acts" of defendant. Defendant also contends that the district court erred in failing to provide a "multiple conspiracy" jury charge, requiring the jury to acquit defendant if it determined that defendant belonged to a conspiracy other than the one for which he was charged. However, no such instruction was requested at trial by the defendant. Defendant alleges that he may have been convicted by the jury based upon the evidence of a conspiracy in Chicago, which occurred one month prior to the charged offense, and, therefore, his conviction should be reversed.

 Defendant's arguments have no merit for the following reasons. The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury. *Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960). A constructive amendment to the indictment occurs when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an

offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir.1986). *See also United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978); *Gaither v. United States,* 413 F.2d 1061, 1071 (D.C.Cir.1969). A variance occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. *Hathaway,* 798 F.2d at 910. A variance crosses the constructive amendment line only when the variance creates "a substantial likelihood" that a defendant may have been convicted of an offense other than that charged by the grand jury. *Id.* at 911. The court reviews whether there has been an amendment to the indictment or a variance *de novo. United States v. Robison,* 904 F.2d 365, 368 (6th Cir.1990).

 In the present case, defendant was charged and convicted of the offense of conspiring on or about September 6–12, 1995 to possessing cocaine with an intent to distribute the drug. Therefore, the problem, if any, is one of a variance, rather than a constructive amendment to the indictment. *United States v. Zelinka,* 862 F.2d 92, 96–98 (6th Cir.1988).

 In order to obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a two-prong test must be satisfied: (1) the variance must be demonstrated; and (2) the variance must affect some substantial right of the defendant. *United States v. Kelley,* 849 F.2d 999, 1002 (6th Cir.), *cert. denied,* 488 U.S. 982, 109 S.Ct. 532, 102 L.Ed.2d 564 (1988). A substantial right is affected only when a defendant proves prejudice to his ability to defend himself or to the overall fairness of the trial. *United States v. Bouquett,* 820 F.2d 165, 168 (6th Cir.1987).

Defendant's claim that there was a variance because there were two separate conspiracies is not supported by the record. The United States presented evidence that

---

**2.** At the Chicago meeting in August 1995, Gutierrez and Oliveres were present on behalf of Tony and met with defendant Manning. At the September 1995 meeting in Detroit, Tony, Gutierrez and defendant Manning were present.

the August 4, 1995 meeting in Chicago related to a cocaine transaction that ultimately was rescheduled for September 1995 in Detroit. Gutierrez, who pled guilty and agreed to cooperate with the government, testified that he had agreed to find buyers for Tony and went to Chicago in early August 1995 for the purpose of negotiating a fifteen kilogram cocaine deal with defendant. After the attempted sale in Chicago did not materialize, Gutierrez, who was still working with Tony, kept in contact with defendant and continued to negotiate. As a result of these continuing negotiations, Tony and Gutierrez went to meet defendant in Detroit to complete a fifteen kilogram deal.

In an unpublished opinion, *United States v. Warner*, No. 94–1212, 1996 WL 166755 (6th Cir.1996), this court reviewed a case involving evidence of negotiations in April 1993 that culminated in a drug transaction on May 13, 1993. *Warner*, although unpublished, is directly on point. In *Warner*, the indictment charged that the drug conspiracy began "on or about May 1993." The defendant in *Warner* argued that evidence of activities in April 1993 created a fatal variance from the indictment. This court stated, "[T]he 'on or about' and 'approximate date' language of the indictment is broad enough to reach events of unspecified dates in April 1993." If the logic of *Warner* is applied to the present case, the district court was correct in concluding that the "on or about" language of the indictment was broad enough to encompass the events of August 4, 1995.

██ Defendant's attempt to assert that the meeting in early August 1995 and the events that took place in Detroit in September 1995 were entirely unrelated must fail. At both the Chicago meeting in August and the Detroit meeting one month later in September, Gutierrez was acting as a broker on behalf of Tony to arrange a sale with defendant, who was the prospective cocaine purchaser. The negotiations in Chicago and Detroit and during the time period between the meetings focused on the delivery of the same amount of cocaine, fifteen kilograms. The negotiations continued from the first meeting in Chicago in August 4, 1995 until the date of the scheduled cocaine transaction in Detroit

on September 12, 1995, without interruption. Thus, the evidence indicates that there was one conspiracy, not two, and the district court was not obligated to take cautionary measures in order to address a multiple conspiracy problem. *United States v. Lash*, 937 F.2d 1077, 1086 (6th Cir.1991), *cert. denied*, 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992).

## III.

For all these reasons, the decision of the district court is hereby **AFFIRMED**.