**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Denise RANKIN, Defendant–Appellant.**

No. 99–1603.

United States Court of Appeals,
Sixth Circuit.

Jan. 10, 2001.

Before NELSON and MOORE, Circuit Judges, and WILHOIT, Chief District Judge.*

NELSON, Circuit Judge.

Defendant Denise Rankin appeals a judgment of conviction and sentence for conspiracy to distribute cocaine base ("crack cocaine") and aiding and abetting in the possession of cocaine base with intent to distribute it. She presents six issues for our consideration: whether reversal of the conviction is required because of an alleged constructive amendment of the indictment, whether there was sufficient evidence to support the jury's verdict, whether prosecutorial misconduct

* The Honorable Henry Wilhoit, Jr., Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

tainted the jury's consideration of the case, whether the trial court erred in its determination of the quantity of drugs attributable to her for sentencing purposes, whether the trial judge usurped the function of the jury in violation of the principle explicated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and whether the defendant was wrongly denied the benefit of the "safety valve" statute, 18 U.S.C. § 3553. Resolving each of these issues against the defendant, we shall affirm the challenged judgment in all respects.

I

Ms. Rankin and her boyfriend, Kevin Goode, were indicted in a multi-count indictment that also included charges against Marvin DeSean Wright, Vincent Parker, and Timothy Yancey, Ms. Rankin and Mr. Goode were tried together, and both were convicted.[1] Ms. Rankin was sentenced to concurrent terms of imprisonment for 120 months, to be followed by a period of supervised release.

The indictment was the product of a police investigation into drug activity in Flint, Michigan. On November 25, 1996, Officer Harold Green had Charlotte Anderson make a controlled buy of crack cocaine at 2208 DuPont Street. Goode resided at the DuPont Street house, which was frequented by defendant Rankin and other members of the conspiracy. Anderson purchased the crack from Parker, and police saw Rankin and Goode leave the residence after the buy. The two later returned to the house. On the following day, November 26, police obtained and executed a warrant to search the residence. Rankin, Goode, and Parker were in house at the time. The search turned up 85 rocks (24.3 grams) of crack

cocaine, two guns, and drug paraphernalia. Ms. Rankin was found to have pager numbers for Goode, Yancey, and Parker in her possession. After the raid, and while Goode was incarcerated, Rankin returned to 2208 DuPont Street to recover two ounces of crack cocaine and $3,000 that the police had failed to find during their search.

Testimony at trial highlighted the involvement of Ms. Rankin and Mr. Goode in the Flint drug trade. Wright testified that he sold Rankin $100 worth of crack cocaine twice a week. When he delivered the cocaine to her, he saw customers waiting to purchase it. Rankin also purchased cocaine from Goode and Yancey. Anderson recalled seeing Rankin sell cocaine on multiple occasions, and Anderson said that she herself purchased cocaine from Rankin twice. Ms. Rankin took the stand and denied ever having sold drugs.

II

A. Constructive Amendment of Indictment

The second superseding indictment on which the case against Ms. Rankin went to trial charges her with (1) participation in a crack cocaine distribution conspiracy extending from "approximately July 1996 until the return of this second superseding indictment [Jan. 29, 1997]," and (2) possession of crack cocaine on November 26, 1996, with intent to distribute it. Rankin argues that the jury instructions impermissibly expanded the scope of the indictment because the jury was not apprised of the dates alleged in the charging instrument. We note that defense counsel acceded to the jury instructions, however, so reversal would be appropriate here only if

---

1. We recently upheld Goode's conviction. See *United States v. Goode*, 182 F.3d 919 (6th Cir.) (table), *cert. denied*, 528 U.S. 921, 120 S.Ct. 282, 145 L.Ed.2d 237 (1999).

"necessary to avoid a miscarriage of justice." *United States v. Hatchett*, 918 F.2d 631, 643 (6th Cir.1990), *cert. denied*, 501 U.S. 1223, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).

■ The defendant cannot show a miscarriage of justice without first demonstrating the existence of a variance and showing that it affected a substantial right. See *United States v. Prince*, 214 F.3d 740, 757 (6th Cir.2000). We have repeatedly held that a "substantial right is affected only when the defendant establishes prejudice in his ability to defend himself or to the overall fairness of the trial." *Id.* (citing *United States v. Manning*, 142 F.3d 336, 339 (6th Cir.1998)).

■ Even if defendant Rankin can demonstrate some variance between the indictment and the proof, she cannot satisfy the "substantial right" portion of the test. With respect to the possession count, Ms. Rankin cites testimony concerning drug transactions that took place at times other than November 26, 1996, and she claims that the judge's failure to specify a date left the jury free to consider extraneous evidence. From the trial's inception, however, the government focused on the November 26 raid. The prosecutor, in his opening statement and again in his closing argument, told the jury that the possession count dealt with the events of November 26, 1996. Five police officers described the execution of the warrant on November 26 in considerable detail. Additional witnesses analyzed and authenticated evidence seized during the November 26 raid. Although reading the indictment to the jury (or giving the jury a copy) would have been preferable, we do not believe that the jury was likely to have been confused or mistaken about the possession count. No miscarriage of justice occurred in this regard.

Neither has the defendant persuaded us that there was a miscarriage of justice as to the conspiracy count. She essentially argues that the prosecution cast its conspiracy net too wide through the introduction of testimony concerning drug-related activities from 1995 until after the raid. Her citations to the record, however, do not reveal any transactions in which Ms. Rankin was involved prior to the summer of 1996. She calls our attention to a description of a purchase of cocaine in "June or July" of 1996 and a statement about deliveries in the "summertime" of 1996, but this is not the stuff of which impermissible variances are made. See *Manning*, 142 F.3d at 339–40. In *United States v. Ford*, 872 F.2d 1231, 1236–37 (6th Cir. 1989), a case relied upon by the defendant, we found an improper constructive amendment only after the trial judge told the jury that it should consider evidence going back as far as 11 months prior to the date charged in the indictment. There was nothing comparable here. Based on the paucity of references prior to July of 1996 and their vague nature, we reiterate the conclusion we reached in Goode's appeal: "there was no material variance between the indictment and the trial evidence."

B.  Sufficiency of the Evidence

The defendant "bears a very heavy burden" in attempting to establish an insufficiency claim. *Prince*, 214 F.3d at 746 (quoting *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir.1994), *cert. denied*, 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994)). The weight of that burden increases when, as here, the defendant fails to move for acquittal at the close of all proofs. See *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir.1998) (finding reversal warranted in such a circumstance "only if the record is devoid of evidence pointing to guilt").

■ Regarding the conspiracy count, we noted in Goode's appeal that "Wright's testimony established that Goode. Wright, Parker, Rankin, and Yancey were all involved together in the sale of drugs." The evidence demonstrates that Ms. Rankin frequented the DuPont Street house while drug transactions were being conducted, that she had the phone numbers of indicted co-conspirators in her purse at the time of the raid, that she purchased cocaine from various individuals charged as co-defendants, that she sold to others at her residence, and that she retrieved money and drugs from the DuPont Street house after the raid. The record is certainly not devoid of evidence pointing to Rankin's guilt on the conspiracy charge.

■ To establish aiding and abetting in the possession of drugs with intent to distribute them, the government must show that the defendant "participated in the venture as something she wished to bring about and sought to make succeed." *United States v. Ward,* 190 F.3d 483, 487 (6th Cir.1999). The record in the case at bar contains ample evidence of Rankin's involvement with the drugs seized at the DuPont Street residence. Although Rankin did not live there, she spent considerable time at the house and on one occasion even confused the number of the DuPont Street house with the number in her own address. She was present at the house both at the time of the controlled purchase on November 25 and at the time of the subsequent raid that uncovered crack cocaine, drug paraphernalia, and weapons. As discussed above, moreover, the record contains evidence of a drug conspiracy in which the defendant participated and which she sought to make succeed.

### C. Prosecutorial Misconduct

In evaluating a claim of prosecutorial misconduct based on statements made in argument to the jury, we must first determine whether the challenged statements were improper at all. *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir.2000). If they were, we must then "look to see if they were flagrant and warrant reversal." *Id.* (describing flagrancy factors and quoting *United States v. Francis,* 170 F.3d 546, 549 (6th Cir.1999)). In the case at bar none of the challenged statements from the prosecutor's closing argument drew any contemporaneous objection. We therefore evaluate these statements under the "plain error" standard of review. See, *e.g., United States v. Carroll,* 26 F.3d 1380, 1383 (6th Cir.1994).

Ms. Rankin first contends that the prosecutor was guilty of misconduct in arguing to the jury that Rankin helped conceal the identity of drug houses and the ownership of a certain Pontiac Grand Am. Wright testified, however, that Ms. Rankin helped him procure telephones for drug houses involved in the conspiracy. At the time of the November 26 raid, moreover, Goode had keys to the Grand Am in his possession. Wright testified that Goode used the Grand Am and treated it as his own, but Ms. Rankin acknowledged that the vehicle was hers and that it was registered in her name. The prosecutor's statements had a foundation in the record, and we do not consider them to be improper.

The second statement challenged by the defendant involves a note she drafted in preparation for a conversation with Goode's parole officer. The prosecutor characterized the note as "practically a confession" and portrayed it as an attempt by Ms. Rankin to protect Goode and to cover up criminal activity. Although Rankin decries the use of the word "confession," the context makes it unlikely that the jury would have thought that the prosecutor was going beyond an argument that the note indicated the defendant's willing-

ness to cover up for Goode, which would, in turn, suggest guilt. The jury remained free to accept or reject this argument, of course.

Ms. Rankin next points out that the prosecutor claimed that Anderson "purchased from Denise four or five times," when Anderson actually testified that she saw Denise Rankin with Goode four or five times. Anderson did say that she made purchases from Ms. Rankin twice, however, and saw Rankin make two or three other sales in 1996. The prosecutor's error, which appears to have been accidental, was thus inconsequential.

Finally, Ms. Rankin argues that the prosecutor improperly placed the prestige of the U.S. Attorney's Office behind the accuracy of Officer Green's investigation and the credibility of his testimony. Discrepancies between the testimony of Officer Green and that of the defendant prompted the prosecutor to encourage the jury to believe Officer Green. In this connection the prosecutor said, among other things, "I submit to you respectfully, and this is your decision, but as a representative of the government, I urge you that Officer Green was the person telling the truth on this."

In *Francis*, we reiterated the standard for evaluating claims of improper vouching and bolstering:

> "Generally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony .... Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the

jury." *Francis*, 170 F.3d at 550–51 (internal citations omitted).

At the same time, we recognized that a prosecutor "may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony." *Id.* at 551. We concluded in *Francis* that the prosecutor "so pervasively and repeatedly" presented unsubstantiated arguments, implicit opinions, and conclusory assertions that reversal of the defendant's conviction was compelled. *Id.* at 553.

■ In the case now before us, by contrast, the prosecutor's credibility attack was fully justified by conflicting accounts given by Ms. Rankin and Officer Green concerning statements that Rankin had made to the officer. Although the prosecutor's use of the phrase "as a representative of the government" is somewhat troubling, the context reveals no grounds for reversal. The closing argument did not include any blunt vouching comments, any implications that the prosecutor had special knowledge of the facts, or any suggestions that the officer's testimony was corroborated by evidence known to the government alone. Furthermore, the prosecutor reminded the jury at least twice during his closing argument that the credibility determination "is your decision." The prosecutor's statements mainly "reflect reasonable inferences from the evidence adduced at trial," *Francis*, 170 F.3d at 551, and we can discern no plain error.

D. Quantity of Cocaine Used for Sentencing

Ms. Rankin objects to the trial judge's finding that she was responsible for the 24.3 grams of crack cocaine found at the DuPont Street residence.[2] We have rec-

---

**2.** The court found the defendant responsible

for a total of 45 grams of crack cocaine: the

ognized that a "member of a conspiracy is responsible for the total amount of cocaine involved in the conspiracy, including other conspirators' conduct, only if that conduct was reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity." *United States v. Lloyd,* 10 F.3d 1197, 1219 (6th Cir.1993), *cert. denied,* 511 U.S. 1043, 114 S.Ct. 1569, 128 L.Ed.2d 213 (1994). The jury convicted Ms. Rankin and Mr. Goode of a conspiracy to distribute cocaine, and Messrs. Wright and Yancey pleaded guilty to the conspiracy count as well. Because a conspiracy was established, Rankin is chargeable with the 24.3 grams if that amount was reasonably foreseeable to her. Given her relationship with her co-conspirators and her presence in the DuPont Street house during Anderson's controlled buy on November 25 and during the November 26 raid, the foreseeability requirement is satisfied. The district court's decision to attribute the 24.3 grams to the defendant was not clearly erroneous.

### E. *Apprendi v. New Jersey*

After briefing was completed, the defendant invited our attention to the Supreme Court's recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and two opinions applying *Apprendi. United States v. Rebmann,* 226 F.3d 521 (6th Cir.2000), and *United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000). The defendant relies on these cases for the proposition that a sentence cannot be enhanced on the basis of the quantity of drugs involved unless the quantity is determined by a jury under the "beyond a reasonable doubt" standard. *Apprendi,* however, simply holds that: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 120 S.Ct. at 2362–63 (emphasis added). Relying on *Apprendi,* the Ninth Circuit vacated the defendant's sentence in *Nordby* when the jury's verdict supported a sentence of up to a statutory maximum of five years but the trial judge imposed a ten year sentence based on his quantity determination. Likewise, we reversed the sentence in *Rebmann* when the judge's finding by a preponderance of the evidence increased "the maximum penalty to which Rebmann was exposed." *Rebmann,* 226 F.3d at 525.

▮ The case at bar differs from *Apprendi, Nordby* and *Rebmann,* in that here the defendant's sentence did not exceed the statutory maximum which the jury's verdict would support. Congress prescribed a maximum sentence of 20 years for possession of a minimal amount of crack cocaine, *see* 21 U.S.C. § 841(b)(1)(C), and the maximum is increased to 30 years if the defendant has a prior felony drug conviction, as Rankin does. Although the trial judge used a preponderance-of-the-evidence standard in making his finding as to quantity, the defendant's ten year sentence does not exceed the statutory maximum in contravention of *Apprendi.*

### F. Safety Valve Statute

▮ To qualify for a reduced sentence under the safety valve statute, 18 U.S.C. § 3553, the defendant must prove by a preponderance of the evidence that she meets each of five criteria spelled out in the statute. *United States v. Adu,* 82 F.3d 119, 123–24 (6th Cir.1996). We review the

---

24.3 grams seized at the DuPont Street residence, seven grams that Yancey sold her, and 14 grams that Wright sold her. The defendant only challenges the ruling concerning the 24.3 grams.

district court's findings under the "clearly erroneous" standard of review.

Here the district court found that the defendant satisfied four of the five safety valve factors, but did not "truthfully provide[] to the Government all the information and evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5). We have previously held that a defendant does not carry his burden by simply stating that he provided the prosecution with all requested information: "The defendant's statement that he gave the government 'all they asked,' if true, does not satisfy his burden of proof under §§ 3553(f)(5) and §§ 5C1.2(5). These provisions clearly require an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Adu*, 82 F.3d at 124.

The defendant points to no affirmative act demonstrating her compliance with § 3553(f)(5); rather, she argues that she has "no relevant or useful other information to provide." After considering the evidence produced at trial, the district court disagreed; the court found that the defendant had "more information with respect to what took place." This finding was not clearly erroneous.

AFFIRMED.