**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0604n.06
Filed: October 7, 2008

**No. 07-1378**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| WILLIS BROCK, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BATCHELDER and GILMAN, Circuit Judges, and ZOUHARY, District Judge*

**JACK ZOUHARY, District Judge.** Defendant Willis Brock ("Brock") appeals his jury conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He claims the Government illegally modified the indictment by constructive amendment or variance by broadening the time period when he allegedly possessed the two guns in question. For the following reasons, we **AFFIRM** the conviction.

_____

* The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

**BACKGROUND**

On March 15, 2006, an officer from the Niles, Michigan Police Department stopped Brock at a Quick Mart gas station for failure to use a right turn signal (JA 130). Brock was both the driver and the registered owner of the car (JA 130-31). Two passengers were also in the car, Adam Papoi and Bruce Benman (JA 131). The officer observed Brock acting suspiciously and asked for permission to search the car. Brock consented (JA 132). The officer opened the trunk but found nothing (JA 132-33).

After removing Brock and the others from the car, the officer found a plastic grocery bag on the back seat. Inside the bag was clothing and two loaded handguns, one a Taurus .44 magnum and the other a Colt .38 special (JA 133-34). The bag also held two boxes of ammunition, a State of Indiana Notice of Appointment in Brock's name, and several bank receipts (JA 137-38, 141-51). These receipts carried Brock's bank account number (JA 149-51).

Following Brock's arrest, he waived his *Miranda* rights. During the subsequent interview, he told detectives that the night before, he and Papoi had handled the guns while at the Hickory Inn Motel (JA 156-59). Brock said his fingerprints would most likely be found on the guns, but the guns belonged to Papoi (JA 156-57). Brock explained he told Papoi to get rid of the guns before they left the motel. At trial, Papoi testified he believed he had seen Brock once with what looked like the Taurus .44 magnum while staying with Brock at his girlfriend's home, but he had not seen the guns in the motel room on March 14 (JA 163-67).

David Deyber, the registered owner of the Colt .38, testified he purchased the gun for Brock (JA 222-31). He was unable to recall whether he had purchased the gun in May 2004 or July 2004 (JA 237-39). His brother, Michael Deyber, was the registered owner of the Taurus .44 (JA 176-77), and he purchased this handgun for Brock in September 2004 (JA 172-77).

On September 12, 2006, Brock was indicted in federal court for violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm (JA 282). Brock initially pled guilty (JA 92-117), but the district court rejected the plea because of concern over the sufficiency of Brock's "knowing and voluntary possession" (JA 118-24). At trial, the jury found Brock guilty of the sole charge of the indictment. The court then sentenced Brock to 42 months in prison, 3 years of supervised release, a fine of $1,800, and a $100 special assessment (JA 14-19). Following sentencing, Brock filed this timely appeal.

## ANALYSIS

### Standard of Review

Generally, this Court reviews issues of constructive amendment to the indictment or variance in the proofs under a *de novo* standard. *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998) (citing *United States v. Robison*, 904 F.2d 365, 368 (6th Cir. 1990)). However, in circumstances where the defendant fails to object to the issue at trial, this Court reviews the case under the plain-error standard. *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006).

Brock conceded at oral argument he made no objection to the alleged indictment modification, and that the plain-error standard applies. Under this standard, Brock must show that:

(1) there was an error, (2) the error was plain, and (3) the plain error affected a substantial right. *United States v. Thomas*, 11 F.3d 620, 629-630 (6th Cir. 1993) (citing *United States v. Olano*, 507 U.S. 725, 732-736 (1993)). If Brock establishes these elements, then the Court must also determine whether the plain error significantly affected the fairness, integrity, or public reputation of the trial. *Id.*

### Constructive Modification

There are two types of amendments to indictments -- actual and constructive modification. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). No actual amendment occurred in this case.[1] Therefore, the Court will only address constructive amendment of the indictment.

Constructive amendment results "when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *Id.* (citing *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003)). Constructive amendments are considered to be *per se* prejudicial. *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000).

Constructive amendment requires a discrepancy between the indictment and both the trial evidence and the jury instructions. *Budd*, 496 F.3d at 521 (citing *Smith*, 320 F.3d at 646 (6th Cir. 2000)). The Court will first address the alleged discrepancy in the trial evidence.

---

[1] An actual amendment occurs when a prosecutor changes the text of the indictment. *Id.* (citing *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000)). Brock does not make such a claim.

The indictment charges that "on or about March 15, 2006" Brock "did knowingly possess one or more firearms" (JA 13). Brock argues the Government's evidence identified three other occasions when Brock allegedly possessed the guns, and that, during closing arguments, the Government specifically broadened the scope of the indictment to include the evening of March 14, 2006 as a time period the jury could consider when deciding if Brock unlawfully possessed a gun.

Adam Papoi, one of the passengers in Brock's car, and who was with Brock at the Hickory Inn Motel the night before, testified the clothing and paperwork found in the grocery bag on the back seat belonged to Brock (JA 163). He also noted he had on previous occasions seen Brock with a "big handgun," but he did not see any guns during their stay at the motel (JA 163-66). Papoi's testimony was not presented to prove Brock actually possessed a gun on previous occasions, but instead to prove the guns found in the car on March 15, 2006 belonged to Brock and were then in his possession. Papoi's testimony was not in conflict with the allegations in the indictment, but rather included complementary details of who owned the guns.

Michael Deyber, the registered owner of the Taurus revolver, testified Brock was with him when he purchased the gun in September 2004 and that he gave Brock the gun a few days later (JA 172-79). Similarly, David Deyber, Michael's brother, testified he purchased the Colt revolver for Brock (JA 222-31), and gave the gun to Brock shortly thereafter (JA 237-39). The Government introduced, and Brock stipulated to, ATF Forms 4473 showing both of these gun purchases were made in 2004. These exhibits supplemented the Deybers' testimony that they had purchased the guns for Brock.

We find no discrepancy between this evidence and the indictment. The gun purchases in 2004, and the change in ownership between the Deybers and Brock, did not alter the essential elements of the offense. Rather, they traced the chain of gun ownership. The evidence aided in proving, as alleged in the indictment, that the guns found in the backseat of Brock's car on March 15, 2006 were owned by Brock, creating a presumption of possession.

Finally, during closing arguments, the Government told the jury that if Brock knowingly and intentionally handled the guns while in the motel room, he is "guilty of actual possession."[2] While the comment was improper, it did not reach the level of affecting a substantial right or causing a miscarriage of justice. *See United States v. Miller*, 531 F.3d 340, 346 (6th Cir. 2008) ("[T]he plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice.") (citations omitted). As the Supreme Court has noted, criminal defendants are entitled "to a fair trial, not a perfect one," and this passing comment during closing argument did not affect the fairness of the proceedings. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

Additionally, any adverse impact of this one misstatement was mitigated by the court's curative instruction following the Government's closing argument (JA 252):

> Members of the Jury, let me explain one thing that is not in the written instructions yet. "Intentional possession" means exactly what I said it meant in the jury instructions. What would not be intentional possession is if someone, for example, tossed the firearms to the defendant, and he didn't want to handle them. In other

---

[2] This stray statement reads as follows: "He's telling the detective -- this is the defendant's own statement, that he handled the firearms the night before . . . If you find that he handled these firearms and he knowingly and intentionally handled these firearms, as he said to Detective Millan he did, he's guilty of actual possession." (JA 246).

words, simply catching something and giving it back would not be intentional possession of the firearm. He must have wanted to have it in his hands and to have handled it, maybe looked at it or whatever.

Brock therefore failed to prove there was a discrepancy between the indictment and the trial evidence. Brock also failed to prove there was a discrepancy between the indictment and the jury instructions. During oral argument, Brock conceded there was no jury instruction irregularity. And, a record review confirms the district court correctly explained the elements of the offense and the indictment (JA 300-01) which mirror the Pattern Jury Instructions approved by this Court. *See* Sixth Circuit Pattern Criminal Jury Instructions, §§ 2.04, 12.01 (2005).

**Variance**

A variance occurs when "the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) (citing *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978)). This Court has noted the defining line between variances and constructive amendments is "sketchy." *Budd*, 496 F.3d at 521 (citing *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002)).

Unlike actual and constructive amendments, however, variances are not *per se* prejudicial. *Budd*, 496 F.3d at 521 (citing *Prince*, 214 F.3d at 757). A variance will not result in reversible error unless "substantial rights" of the defendant have been affected. *Hathaway*, 798 F.2d at 910. In order for such a finding to result, the defendant must show prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to prevent future

prosecutions. *Id.* (citing *United States v. Miller*, 471 U.S. 130 (1985)). Accordingly, to obtain a reversal based on a variance, the defendant must satisfy a two-part test by demonstrating (1) a variance occurred; and (2) the variance affected a substantial right of the defendant. *United States v. Kelley*, 849 F.2d 999, 1002 (6th Cir. 1988).

No variance occurred in this case. Although the evidence admitted at trial included events that occurred prior to the traffic stop, as discussed above, such evidence did not prove facts different from those alleged in the indictment. Rather, the Government questioned the Deybers about the "straw purchases" they made on behalf of Brock in order to identify Brock as the actual owner of the guns found on March 15. This line of questioning was intended to disprove Brock's statements that Papoi actually owned the guns (JA 110-14).

And even if Brock had demonstrated a variance to the indictment, he would be unable to prove a "substantial right" had been affected. The Government clearly provided notice prior to trial that the Deybers would testify they purchased the guns for Brock (JA 35). Defense counsel stipulated to the admission of ATF Forms 4473 for the purchase of the guns (JA 86-87). Also, the testimony regarding the handling of the guns in the motel room on March 14 did not affect a substantial right. This evidence came from Brock's **own** statements to the detectives. Brock was well aware of the allegation he possessed the guns on March 14 (JA 92 & 118), and he did not object to such evidence at trial. Therefore, Brock cannot prove a variance in the trial proof.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.