*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0312p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

        No. 05-4098

MICHAEL J. BUDD,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 04-00508—Lesley Brooks Wells, District Judge.

Argued: March 15, 2007

Decided and Filed: August 13, 2007

Before: COOK and McKEAGUE, Circuit Judges; EDGAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Sebastian Rucci, Poland, Ohio, for Appellant. Gregory B. Friel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Sebastian Rucci, Poland, Ohio, for Appellant. Gregory B. Friel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

McKEAGUE, J., delivered the opinion of the court, in which EDGAR, D. J., joined. COOK, J. (pp. 14-17), delivered a separate dissenting opinion.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Michael J. Budd appeals his conviction of one count of conspiracy and three counts of depriving another of constitutional rights under color of law. For the reasons set forth below, we affirm.

_____

[*] The Honorable R. Allan Edgar, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I.  BACKGROUND

A grand jury indicted Budd, once second-in-command of the Mahoning County, Ohio Sheriff's Department, on four counts related to his alleged use of excessive force against inmates and pretrial detainees in his custody.  Count 1 charged conspiracy to commit any offense against the United States in violation of 18 U.S.C. § 371, and listed two object offenses: (1) depriving Tawhon Easterly of his constitutional rights under color of law in violation of 18 U.S.C. § 242; and (2) witness tampering, in violation of 18 U.S.C. § 1512(b)(2).  Counts 2, 3, and 4 respectively charged Budd with depriving Easterly (a pretrial detainee), Brandon Moore (a sentenced inmate), and Stephen Blazo (a pretrial detainee) of their constitutional rights under color of law, in violation of 18 U.S.C. § 242.  In Budd's first trial, the jury convicted him on Count 1 but deadlocked on the other counts.  The court entered the conviction on Count 1 and declared a mistrial on the other counts.  Upon retrial of Counts 2, 3, and 4,[1] Budd was convicted on each.  He now appeals.

## II.  CONSTRUCTIVE AMENDMENT TO MOORE CHARGE

Budd was convicted of using excessive force against inmate Brandon Moore in violation of 18 U.S.C. § 242.  Budd argues that because the indictment referred to a Fourteenth Amendment basis for the right to be free from excessive force, while the jury instructions referred to an Eighth Amendment basis for the right, the indictment was constructively amended.  We review the question of whether an amendment or a variance occurred *de novo*.  *United States v. Prince*, 214 F.3d 740, 756 (6th Cir. 2000) (citing *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998)).

An indictment may be the subject of an actual amendment, a constructive amendment, or a variance.  An actual amendment occurs when the prosecutor actually changes the text of the indictment. *Id.* at 757 (citing *Martin v. Kassulke*, 970 F.2d 1539, 1542 (6th Cir. 1992)).  By contrast,

> [a] constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.

*United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003) (citing *United States v. Stirone*, 361 U.S. 212 (1960)).  Both actual and constructive amendments are considered *per se* prejudicial and are reversible error.  *Prince*, 214 F.3d at 757.

Variances, by contrast, are not *per se* prejudicial. *Id.*  Generally speaking, a variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment."  *Id.* at 756-57 (alteration in original) (internal quotations omitted) (quoting *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998)).  However, as this court observed in *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002) (vacated and remanded by the Supreme Court for reconsideration in light of *Booker*), "the distinction between a variance and a constructive amendment is sketchy . . . ."[2]

---

[1] In the second trial, the court redacted the conspiracy count (the former Count 1 for which Budd was already convicted), and renumbered the substantive counts as Counts 1, 2, and 3.  To avoid confusion, the parties' briefs number the substantive counts as in the first trial—that is, as Counts 2, 3, and 4—and we will do the same.

[2] The dissent complains of the majority's decision to follow this court's "inscrutable" precedent regarding the distinction between a variance and a constructive amendment.  However, contrary to the dissent's suggestion, this precedent does not contradict Supreme Court case law on the subject, but only defines the application of Supreme Court precedent in particular situations; and, though our precedent in this area may not be easy to follow, we nevertheless are obliged to do so. *See* 6th Cir. R. 206(c).

One complication is created by the fact that, under Sixth Circuit law, "[i]f a variance infringes too strongly upon the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation, the variance is considered a 'constructive amendment.'" *Prince*, 214 F.3d at 757 (citing *Martin*, 970 F.2d at 1542). Thus, a variance in some cases is not different in kind from a constructive amendment, but merely in degree; if it is serious enough, it *becomes* a constructive amendment.[3] "To obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *Id.* (citing *United States v. Maliszewski*, 161 F.3d 992, 1014 (6th Cir. 1998)); *see also United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006); *United States v. Suarez*, 263 F.3d 468, 478 (6th Cir. 2001); *Prince*, 214 F.3d at 757; *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998); *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989).

In *Hynes*, this court offered one manner of distinguishing between a constructive amendment and a variance that may become a constructive amendment by reason of its effect on substantial rights: "defendants can establish a variance by referring exclusively to the evidence presented at trial, but cannot demonstrate a constructive amendment — which is per se prejudicial — without proof that the important functions of an indictment were undermined by both the evidence presented and the jury instructions." 467 F.3d at 962. This reflects the rule that "[o]nce the indictment presents a factual basis for an element of a crime, the prosecution may not rest its proof of that element of the crime at trial on other facts." *United States v. Caldwell*, 176 F.3d 898, 902 (6th Cir. 1999).

However, a different distinction operates in cases in which the difference between indictment and jury instructions is not the facts of the offense, but the legal theory. The "'key question' in determining whether [such a] case involve[s] a variance or a constructive amendment [i]s whether" the offense described by the indictment and the one described by the jury instructions are "two alternative crimes or merely two alternative methods by which the one crime . . . could have been committed." *Prince*, 214 F.3d at 758 (quoting *Martin*, 970 F.2d at 1543). The Sixth Circuit first explained this distinction in *Martin v. Kassulke*, 970 F.2d 1539, 1540 (6th Cir. 1992), in which the defendant was convicted of first-degree rape. Under Kentucky law, first-degree rape consists of either "'sexual intercourse with another person by forcible compulsion,'" or "'sexual intercourse with another person who is incapable of consent because he . . . [i]s physically helpless; or [i]s less than twelve years old.'" *Id.* at 1541-42 (quoting Ky. Rev. Stat. § 510.040). The indictment stated that the defendant "committed the offense of RAPE IN THE FIRST DEGREE by knowingly and unlawfully engaging in sexual intercourse with [the victim] by forcible compulsion and further causing said [victim] serious physical injury." *Id.* at 1542. The jury was instructed to find the defendant guilty "if, and only if, you believe from the evidence beyond a reasonable doubt" that the defendant engaged in sexual intercourse with the victim and "[t]hat he did so by forcible compulsion, OR [t]hat [the victim] was incapable of consent because she was physically helpless." *Id.*

The *Martin* court first noted that there was a variance between the jury instructions and the indictment, as "[t]he jury instruction . . . mentions the possibility that [the victim] was incapable of consent because of physical helplessness, a possibility that had not been mentioned in the indictment." *Id.* The court rejected the defendant's argument that "the due process right to clear

---

[3]The dissent disparages this fact as logically flawed, and a misapprehension on the part of the majority "result[ing] from loose language in past cases." *Infra* at __. However, whether or not it is appealing as a legal rule, this court's published cases have clearly held that a variance can become a constructive amendment by reason of its seriousness . *See, e.g.*, *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006); *United States v. Suarez*, 263 F.3d 468, 478 (6th Cir. 2001); *Prince*, 214 F.3d at 757; *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998); *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989).

notice of criminal charges guaranteed by the fourteenth amendment includes notice of the exact method by which the criminal actions were alleged to have been committed," and held that

> the Kentucky rape statute . . . provides only one offense of rape with two different methods of commission. . . . [The statute] was drafted to define all kinds of forcible rape, by whatever mode or method. "It actually makes no difference to the law, the victim, nor even the defendant, how he committed the act, it is the violation that is defined and prohibited."

*Id.* at 1543, 1545-46 (citation omitted) (quoting *Clayborn v. State*, 647 S.W.2d 433, 436 (Ark. 1983) (Hickman, J., dissenting)). The *Martin* court therefore reversed the district court's grant of a writ of habeas corpus. *Id.* at 1547.

This court followed *Martin* in *Suarez*, in which the defendant, a former police officer, was convicted for converting "victim restitution money to his own benefit" in violation of 18 U.S.C. § 666(a)(1). 263 F.3d at 471-72. That statute provides that "[w]hoever . . . being an agent of an organization [including a government or government agency] . . . embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts . . . property that . . . is owned by, or is under the care, custody, or control of such organization, government, or agency" shall be fined or imprisoned, or both. 18 U.S.C. § 666(a)(1). The statute does not define embezzlement, theft, or fraud; the definitions of these offenses therefore must come from another source of state or federal law. *See Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 818, 822 (2007) (holding that "theft offense" in the Immigration and Nationality Act should be understood to correspond to the "generic definition of [the] crime"); *Taylor v. United States*, 495 U.S. 575, 595 (1990) (in the Travel Act, "Congress made no attempt to define the statutory term 'bribery,' but relied on the accepted contemporary meaning") (quoting *Perrin v. United States*, 444 U.S. 37, 45 (1979)); *Moore v. United States*, 160 U.S. 268, 269 (1895) (supplying common-law definitions of embezzlement and larceny for a federal statute which used the terms but did not define them).

The *Suarez* court recognized that the "defendant appears to have demonstrated the existence of a variance. The indictment makes much of Suarez's deception . . . as constituting the act of conversion, while the jury instructions make nothing of it." 263 F.3d at 478. Thus, the indictment indicated that the defendant obtained the property through larceny by trick; the jury instructions "describ[ed] conversion generally," and thereby "may have opened up the possibility in the jury's mind that the conversion was accomplished by something more akin to embezzlement. It is even arguable that they did find this was what Suarez did, since he was acquitted of money laundering." *Id.* at 479. However, the court held, "under the statute, embezzlement is not a crime alternative to the one charged, but simply another of a number of types of knowing conversion." *Id.* The court held that "Suarez's defense would not, under our case law, have been prejudiced by the variance," and affirmed the conviction. *Id.* at 479, 489.

In other Sixth Circuit cases, this court has held that the offense described in the indictment and that described in the jury instructions are two different offenses, not two methods of committing one offense, and therefore that a constructive amendment occurred. Budd cites *United States v. Combs*, 369 F.3d 925, 930 (6th Cir. 2004), in which the defendant was indicted for unlawful possession of firearms in conjunction with a drug trafficking offense. The jury instructions were drawn, in somewhat disorganized fashion, from both the definitions of "possession" and of "use" of a firearm. 369 F.3d at 935. Both offenses are prohibited by the same statute, which provides for punishment of "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, *or* who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A) (emphasis added).

The *Combs* court held that possession and use, though defined in the same subparagraph, were two different offenses. It based this decision on (1) the fact that the statute separates the offenses with an "or"; (2) the fact that the legislative history indicated that the "in furtherance of" language applied to the possession offense but not the use offense; and (3) the fact that use involves different conduct than possession. 369 F.3d at 931, 932-33. The court therefore held that "an impermissible amendment of . . . the indictment occurred." *Id.* at 936.

Budd also cites *United States v. Cusmano*, 659 F.2d 714, 719 (6th Cir. 1981), in which the defendant was indicted for a violation of the Hobbs Act. One element of that offense is extortion. *Id.* at 719. Extortion may be by threat of economic loss or by threat of physical harm. *Id.* at 715. The indictment specified that the defendant had committed extortion by threatening the victims with economic loss, while the evidence additionally showed extortion through threats of physical violence; the district court instructed the jury that it could return a conviction based on either theory. *Id.* at 715, 717, 719. This court stated that "when one means of extortion is charged, a conviction must rest on that charge and not another, even if it is assumed that under an indictment drawn in general terms a conviction might rest upon a showing of either form of extortion."[4] *Id.* at 719. Thus, the court held that the introduction of evidence that the defendant committed extortion through physical violence together with the district court's instruction that the defendant could be convicted on that theory constituted a constructive amendment. *Id.* at 718-19.

In this case, the indictment reads in relevant part,

> [D]efendant herein and others known and unknown to the Grand Jury, while acting under color of the laws of the State of Ohio, and while aiding and abetting each other, did use and cause to be used excessive force on Brandon Moore, a detainee at the Courthouse of a judicial proceeding, resulting in bodily injury, thereby willfully depriving him of rights and privileges secured and protected by the Constitution and the laws of the United States, to wit: the right to Due Process of law under the Constitution, which includes the right to be free from excessive force amounting to punishment by one acting under color of law.
> All in violation of Title 18, United States Code, Sections 242 and 2.

Indictment at 7. The relevant jury instruction provides, "The first element the government must prove is that the conduct of [the defendant] deprived . . . Brandon Moore . . . of a right or rights secured by the Constitution or laws of the United States. . . . Among those rights [is] . . . the Eighth Amendment right to be free from cruel and unusual punishment." Transcript at 969-70. The instructions also explained that "[t]he Eighth Amendment provides [that] inmates like Brandon Moore, who have been sentenced for a crime, possess the right not to be subject to unnecessary and wanton infliction of pain." Transcript at 972; *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986) (holding that "an Eighth Amendment claimant [must] allege the unnecessary and wanton infliction of pain," or allege that "'force was applied . . . maliciously and sadistically for the very purpose of causing harm'") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Brandon Moore was a convicted prisoner at the time of the mistreatment for which Budd was convicted. Thus, as the jury instructions correctly explained, his right to be free from excessive force derives from the Eighth Amendment. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). The standard the indictment accuses Budd of violating, "the right to Due Process of law . . . , which includes the right to be free from

---

[4] This holding is clearly in tension with the holding in *Martin*. *Cf.* 970 F.2d at 1545-46 ("[T]he Kentucky rape statute . . . provides only one offense of rape with two different methods of commission. . . . 'It actually makes no difference to the law, the victim, nor even the defendant, how he committed the act, it is the violation that is defined and prohibited.'") (citations omitted).

excessive force amounting to punishment," is the standard applicable to a pretrial detainee, which Moore was not. *Id.* at 300 ("[T]he Fourteenth Amendment . . . 'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'") (quoting *Graham*, 490 U.S. at 395 n.10).

The indictment and the jury instructions describe the same actions, and they specify an offense against the same statute, 18 U.S.C. § 242, which prohibits a person acting "under color of law" from "subject[ing] any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." However, by their respective citation of Fourteenth Amendment and Eighth Amendment restrictions of the use of excessive force, they refer to different standards under which a violation of § 242 can be evaluated. Therefore, the "'key question' . . . [is] whether the jury instruction and evidence introduced another crime or an 'alternative method[] by which the one crime . . . could have been committed.'" *Suarez*, 263 F.3d at 478 (second alteration in original) (quoting *Prince*, 214 F.3d at 758).

In this case, although it is a close question, based on our prior cases, it seems most reasonable to conclude that the Fourteenth Amendment and Eighth Amendment excessive force standards describe two alternative methods by which one crime could be committed, rather than two crimes. The variance between the indictment and the jury instructions here is most analogous to that in *Suarez*, in which the offense of conviction, conversion of the funds of an organization receiving federal benefits in violation of 18 U.S.C. § 666(a)(1), incorporated as an element the content of other laws—namely, state or federal laws against conversion of funds, under a variety of legal theories. In *Suarez*, the fact that the indictment indicated that the conversion had been effected by larceny by trick, while the jury instructions permitted conviction if conversion had been accomplished by embezzlement, entailed only a variance. This is so although the two theories involved different times at which the defendant had formed the intention to convert the funds to his use,[5] because these were simply two methods of committing the one crime of conversion of funds. Likewise, in this case, the indictment and the jury instructions address methods of violating the statute in question that rest on different legal rules:  in this case, different constitutional rights, and in *Suarez*, different common-law conversion offenses.

---

[5]"Larceny by trick" is committed when a thief acquires possession of an item by telling its rightful owner that "he intended to use it for one purpose when in fact he intended" to keep it or "to sell it and keep the proceeds." *Bell v. United States*, 462 U.S. 356, 359 (1983). By contrast, embezzlement occurs when the thief first comes into possession of the property legitimately, and "the fraudulent intent occurs later and the defendant [then] converts the property." *Skinner v. Oklahoma*, 316 U.S. 535, 539 (1942). "Whether a particular act is larceny by [trick] or embezzlement thus turns . . . on when the felonious intent arose . . . ." *Id.*

The situation here is also distinguishable from that in the cases Budd cites,[6] in which this court held there existed two different offenses, rather than two different methods. Neither *Cusmano* nor *Combs* addressed a situation wherein the definition of a statutory offense is dependent on the content of other law. In fact, in *Combs*, the court based its decision in part on the fact that the two offenses were explicitly set forth in the statute, and separated by the word "or." 369 F.3d at 931. In both *Cusmano* and *Combs*, this court focused on the fact that the proof at trial showed different offense conduct than that alleged in the indictment. *See* 369 F.3d at 932-33; 659 F.2d at 719. In this case, the government did not present evidence of different offense conduct than that alleged in the indictment. Though the proceedings before the grand jury are not part of the record on appeal, before the petit jury, the government offered the testimony of Brandon Moore and of Deputies Sam Oliver and Jeffrey Tinkey to prove the charge of use of excessive force against Moore. *See* Transcript at 66-75, 100-09, 115-24. This testimony consisted simply of a description of Budd's and Moore's words and actions during the incident; the prosecutor carefully prevented the witnesses from speculating as to Budd's motives or intent. *See* Transcript at 117 ("No, not what his reasons were. What about your observations . . . ."). It is difficult to see how the government's evidence regarding this charge was in any way different from what it would have been had Moore been a pretrial detainee entitled to the protection of the Fourteenth Amendment.

Thus, the Fourteenth Amendment language in the indictment and the Eighth Amendment language in the jury instructions describe two different methods of committing the same crime, and the difference is merely a variance. Budd does not even argue that the variance affected his "substantial rights," other than the right to be convicted only of an offense which previously had been considered by a grand jury, a right which is not implicated by a variance. Rather, in the case of a variance, prejudice to substantial rights occurs if the defendant is not "enabled to present his defense and not be taken by surprise by the evidence offered at trial," or is not "protected against another prosecution for the same offense." *Berger v. United States*, 295 U.S. 78, 82 (1935); *see also Martin*, 970 F.2d at 1546-47; *Ford*, 872 F.2d at 1235. The actions for which Budd was convicted were the same under both theories, and, as discussed above, the prosecution presented no proof it would not have presented for a Fourteenth Amendment violation. Budd's ability to present a defense thus could not reasonably have been undermined by the change; and there is no suggestion that he could be subjected to double jeopardy. Therefore, the variance did not cause prejudice to Budd's substantial rights, and did not rise to the level of a constructive amendment by reason of its severity.

---

[6]Other Sixth Circuit cases finding a constructive amendment based on the existence of two offenses are also distinguishable. In *United States v. Stubbs*, 279 F.3d 402 (6th Cir. 2002), the defendant pled guilty to a violation of 18 U.S.C. § 924(*o*), which prohibits conspiracy to possess a firearm in connection with a drug trafficking offense or a crime of violence. However, at sentencing, the district court selected an appropriate sentence based on the conclusion that the defendant had actually violated § 924(c). That subsection criminalizes the possession of a firearm in conjunction with a crime of violence or a drug trafficking crime, and provides for a minimum sentence, rather than a maximum. *Id.* § 924(c)(1)(A). The *Stubbs* court held, "There can be no doubt that § 924(c) and § 924(*o*) charge different offenses. Each statute requires different levels of proof as to conduct and *mens rea*. And, most notably, these two statutory provisions call for significantly different statutory penalties, which under *Jones* [*v. United States*, 526 U.S. 227 (1999),] makes them different offenses." 279 F.3d at 409. In this case, there is no question of different statutory penalties for excessive force under the Eighth Amendment and the Fourteenth Amendment.
    In *Watson v. Jago*, 558 F.2d 330 (6th Cir. 1977), the indictment charged the defendant with first-degree murder under a premeditation theory. *Id.* at 331. The jury instructions mirrored the charge in the indictment, but the prosecution offered at trial evidence of first-degree murder under a felony murder theory. *Id.* at 336, 339. Though the two types of first-degree murder were prohibited by the same statute, Ohio case law held that the two were different offenses. *Id.* at 334-35 (citing *Ohio v. Ferguson*, 195 N.E.2d 794 (Ohio 1964)). Therefore, the *Watson* court held that the indictment had been constructively amended. *Id.* at 339. However, in that case, the court did not make a determination that premeditated murder and felony murder were two different offenses; rather, it simply followed a state court ruling to that effect. The holding therefore is not helpful here.

### III. CONSTRUCTIVE AMENDMENT TO EASTERLY CHARGE

#### A. Conspirator Liability Instruction

In the first trial, Count 1 charged Budd with participation in a conspiracy to violate Easterly's constitutional rights, and Count 2 charged Budd with the substantive offense of violating Easterly's constitutional rights. The jury convicted on the Count 1 conspiracy, but deadlocked on Count 2 (as well as on the substantive offenses in Counts 3 and 4). At retrial on the substantive offenses, the court instructed the jury on co-conspirator liability under *Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946), which holds that a defendant is liable for a co-conspirator's crimes if they are foreseeably committed in furtherance of the conspiracy. Budd argues that this instruction amounted to a constructive amendment, on the theory that by instructing the jury on a conspiracy *theory of liability* under *Pinkerton*, the district court constructively amended the violation of constitutional rights charge to a (duplicative) conspiracy charge. As noted above, we review *de novo* the question of whether a constructive amendment occurred.

The majority of circuits have held that district courts may give a *Pinkerton* co-conspirator liability instruction for a substantive charge, even for a defendant who has not been charged with conspiracy. *See, e.g.*, *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001); *United States v. Macey*, 8 F.3d 462, 468 (7th Cir. 1993) ("We have long recognized that '[i]t is not essential that the indictment contain a separate count charging conspiracy in order to take advantage of the doctrines peculiar to conspiracy.'") (quoting *United States v. Wilson*, 506 F.2d 1252, 1257 (7th Cir. 1974)); *United States v. Jackson*, 627 F.2d 1198, 1216-17 (D.C. Cir. 1980) ("Experienced prosecutors alert court and counsel that they are relying on [a *Pinkerton* theory] in cases where only substantive crimes are charged by announcing that they are proceeding on a conspiracy theory."); *Davis v. United States*, 12 F.2d 253, 257 (5th Cir. 1926) ("Although conspiracy be not charged, if it be shown by the evidence to exist, the act of one or more defendants in furtherance of the common plan is in law the act of all."). As Budd notes, the Ninth Circuit recently held the opposite: "It is error to use a *Pinkerton* instruction in a case in which the indictment does not allege a conspiracy." *United States v. Nakai*, 413 F.3d 1019, 1023 (9th Cir. 2005). The Sixth Circuit has not yet addressed this issue. *See United States v. Min Nan Wang*, 222 F.3d 234, 240 (6th Cir. 2000) ("We need not resolve these thorny questions."). We find the rule of the majority of circuits more persuasive, and hold that a district court may properly provide a *Pinkerton* instruction regarding a substantive offense, even when the defendant is not charged with the offense of conspiracy. Thus, the district court's instructions were proper with regard to the substantive § 242 offense, and the indictment was not constructively amended.

Budd also insists that *United States v. Henning*, 286 F.3d 914 (6th Cir. 2002), requires reversal. In that case, the trial court gave a *Pinkerton* instruction, and the defendant was convicted of both conspiracy and several substantive counts. *Id.* at 918-19. The defendant moved for and was granted a post-verdict judgment of acquittal on the conspiracy count based on insufficient evidence. *Id.* at 919. This court later found plain error in the district court's failure to reconsider the substantive charges as well, because the *Pinkerton* instruction may have produced a conviction on the substantive charges based on a *non-existent* conspiracy. *See id.* at 921. In this case, however, there was sufficient evidence that a conspiracy existed; in fact, Budd was convicted of conspiracy in the first trial. It was not the absence of a conspiracy *charge* that led this court to reverse in *Henning*; it was the absence of a conspiracy.

#### B. Substitution of "or" for "and"

Count 1 charged Budd with conspiracy under 18 U.S.C. § 371 as follows:

Michael J. Budd . . . did knowingly conspire . . . to: a) deprive Tawhon Easterly of

rights and privileges secured and protected by the Constitution . . . in violation of Title 18, United States Code, Section 242, and b) corruptly persuade . . . another person with intent to hinder [a federal criminal investigation], in violation of Title 18, United States Code, Section 1512(b)(3).

Indictment at 3-4. Budd again complains of a constructive amendment. Although this court generally reviews *de novo* the legal issue of whether there was a constructive amendment, if the defendant fails to object at trial to an instruction claimed on appeal to represent a constructive amendment, this court reviews only for plain error. *See, e.g.*, *United States v. Brown*, 332 F.3d 363, 371 (6th Cir. 2003) (citing *Cotton*, 535 U.S. at 631). Budd cannot show any error, let alone plain error, and we reject this challenge.

Budd argues that because the object offenses are separated by the word "and," the trial court impermissibly broadened the possible bases for conviction—and thereby constructively amended the indictment[7]—when it instructed the jury to convict on Count 1 if it found *either* that Budd conspired to violate Easterly's constitutional rights *or* that Budd conspired to tamper with a witness. This challenge must fail. *United States v. Hathaway*, 798 F.2d 902, 913 (6th Cir. 1986) (finding no constructive amendment where the indictment charged receipt of checks known to be "stolen, converted, *and* taken by fraud," but the court instructed the jury to convict if it found the checks were known to be "stolen, converted, *or* taken by fraud"); *see also United States v. Barrios-Perez*, 317 F.3d 777, 779-80 (8th Cir. 2003) (finding no constructive amendment where the drug-conspiracy indictment was phrased in the conjunctive, but the court instructed the jury in the disjunctive).[8]

## IV. JURY INSTRUCTIONS

Counts 2 and 4 charged Budd with violating the constitutional rights of Tawhon Easterly and Steven Blazo, respectively, in violation of 18 U.S.C. § 242. Both Easterly and Blazo were pretrial detainees, so the relevant inquiry is whether Budd's use of excessive force violated their Fourteenth Amendment due process rights. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979). Budd complains that the district court misstated the law by failing to instruct the jury that his conduct would need to "shock the conscience" to violate the Fourteenth Amendment.

We believe Budd waived the objection. Defense counsel initially objected to the court's omission of the words "shocks the conscience" from its Fourteenth Amendment jury instructions, but at a very late stage of the proceedings counsel told the court, "[A]s I see the Fourteenth Amendment [instruction] I'm getting more comfortable with it, but the Eighth Amendment one I believe has this subjective stuff that's missing . . . ." Transcript at 764. Although at the close of trial defense counsel summarily rested on his prior objections, he did not contradict his earlier statement that he was "comfortable" with the Fourteenth Amendment instructions. Budd cannot now complain about the court's explanation of the Fourteenth Amendment standard.

However, even if Budd had preserved the objection, it lacks merit. This court "review[s] a properly preserved objection to a jury instruction by determining 'whether the charge, taken as a

---

[7] *See, e.g.*, *United States v. Miller*, 471 U.S. 130, 138 (1985) (citing *Stirone*, 361 U.S. at 213, for the proposition that a constructive amendment may result when the trial court "broaden[s] the possible bases for conviction from that which appeared in the indictment").

[8] Budd's brief also disputes the government's position that Count 1 of the indictment involves "not two distinct conspiracies, but only one conspiracy with different means of violating the same." Appellant's Reply Brief at 1. The conspiracy statute, 18 U.S.C. § 371, makes it a crime for two or more persons to agree "to commit any offense against the United States"; therefore, "any offense against the United States" is a "different means" of violating 18 U.S.C. § 371.

whole, fairly and adequately submits the issues and applicable law to the jury.'" *United States v. Blood*, 435 F.3d 612, 623 (6th Cir. 2006) (quoting *United States v. Pensyl*, 387 F.3d 456, 458 (6th Cir. 2004)). This court "may reverse the trial court based on a faulty charge 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *Id.* (quoting *Pensyl*, 387 F.3d at 458).

The substantive component of Fourteenth Amendment due process protects citizens against conduct by law enforcement officers that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Budd stops there, arguing that the failure to mention the words "shocks the conscience" renders the instruction deficient and entitles him to acquittal.[9] But the concept of what "shocks the conscience" varies with context. *See, e.g.*, *id.* at 850-51. Cases such as *Graham*, 490 U.S. at 395 n.10, and its precursor, *Wolfish*, 441 U.S. at 535 & n.16, specifically address substantive due process in the context of pretrial detention. This circuit has relied on *Graham* for the proposition that the Due Process Clause protects a pretrial detainee from "excessive force that amounts to punishment." *See, e.g.*, *Phelps*, 286 F.3d at 300. By adhering to cases such as *Graham* and *Wolfish* in its instructions, the district court fairly and adequately stated the law pertinent to pretrial detainees' substantive-due-process rights. *See Blood*, 435 F.3d at 623.

## V.  MOTION FOR JUDGMENT OF ACQUITTAL AS TO BLAZO CHARGE

Budd argues that the district court erred in denying his motion for acquittal on Count 4, which charged him with violating the Fourteenth Amendment rights of pretrial detainee Steven Blazo by using excessive force amounting to punishment in violation of 18 U.S.C. § 242. This court reviews *de novo* the denial of a motion for judgment of acquittal. *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004). The issue is "'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*Bell v. Wolfish* and its progeny govern whether Budd's behavior represented "excessive force amounting to punishment." Under *Wolfish*, in the absence of "an expressed intent to punish," the question is whether the challenged practice or behavior "is reasonably related to a legitimate government objective." 441 U.S. at 538, 539; *see also Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994). If the action is "arbitrary or purposeless[,] a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Wolfish*, 441 U.S. at 539. Although retribution and deterrence are not legitimate nonpunitive purposes, *id.* at 539 n.20, the maintenance of security and order at detention facilities is, *id.* at 540, 546-47. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547 (citing cases).

Budd's brief identifies no legitimate nonpunitive purposes for his actions; rather, he argues, correctly, that *de minimis* injuries do not support a constitutional violation, even if intentionally inflicted. Although a pretrial detainee's injuries must be more than *de minimis* to support a constitutional violation, they need not be "serious" or "significant," *cf. Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992) (convicted prisoner); *see also United States v. Walsh*, 194 F.3d 37, 47-48 (2d

---

[9] With his citation to *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 1999), Budd also implicitly objects to the court's failure to instruct the jury to convict only if he acted "maliciously and sadistically for the very purpose of causing harm," but this formulation applies only in emergency-type situations such as a prison riot or a high-speed police chase. *See, e.g.*, *Lewis*, 523 U.S. at 853-54. None of the incidents at issue under Counts 2 and 4 occurred under such conditions.

Cir. 1999) (pretrial detainee), as long as there is some degree of actual injury, *Walsh*, 194 F.3d at 50.

In this case, the prosecution introduced testimony that Budd rammed Blazo's head into at least two different doors, slammed his head into a table, and repeatedly shoved him into a wall. Although the prosecution introduced no medical evidence of the extent of Blazo's injuries, Blazo testified that he requested medical attention, albeit unsuccessfully, and that he had bumps on his head and bruising on his body. In *Hudson v. McMillian*, the Supreme Court held that the prisoner's "minor bruises and swelling of his face, mouth, and lip," loosened teeth, and a cracked dental plate were "not *de minimis* for Eighth Amendment purposes." *Id.* at 4, 10. Viewed in the light most favorable to the prosecution, the evidence indicates that Blazo's injuries here are comparable to those of the prisoner in *Hudson*.

## VI. MOTION FOR JUDGMENT OF ACQUITTAL AS TO MOORE CHARGE

Budd argues that the trial court erred in denying his motion for acquittal on Count 3, which charged Budd with violating the constitutional rights of inmate Brandon Moore. This court reviews *de novo*, and asks whether any rational trier of fact could have found beyond a reasonable doubt that Budd violated the Eighth Amendment rights of Brandon Moore, a convicted and sentenced inmate. *Meyer*, 359 F.3d at 826. Budd cannot meet this standard, and we reject this challenge.

In *Hudson*, the Supreme Court clarified the law applicable to convicted prisoners' excessive-force claims. The Court held that when corrections officials use force to keep order, and this force is alleged to violate the Eighth Amendment rights of prisoners, "the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7.

More recently, the Supreme Court has invoked *Whitley* to hold that the "'unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). *Hope* went on to reaffirm that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Controlling an emergency situation and maintaining order are legitimate penological justifications, *see, e.g.*, *Bell*, 441 U.S. at 540, 546-47, but when safety concerns have abated or an emergency has been dispelled, the justification may disappear. *See Hope*, 536 U.S. at 738.

In this case, several officials took Moore and his codefendants to wait in a witness room following their sentencing. Moore's hands and feet were shackled, and his hands were cuffed to a bellychain. Moore began "making fun of the whole situation" and "bragging about how many years he received," but was not "physically doing anything to threaten any of the deputies." Transcript at 68, 80-81. Budd told Moore to "shut the f*** up and sit down," and then forced Moore into a chair.[10] *Id.* at 69. Budd then ordered the two codefendants removed, leaving Budd, Deputy Tinkey, Deputy Oliver, and Moore in the witness room. After "a few short minutes," Budd grabbed the seated and compliant Moore by the collar and "slammed" him into the steel frame of a window, leaving "a crease in [Moore's] forehead." *Id.* at 69-70. Budd then ordered Tinkey to hold Moore against the window. Budd attempted to pull up Moore's sagging pants, and Moore, though still shackled, reacted by "jumping" at Budd. It is unclear whether this reaction was an attempt to harm Budd, mere surprise at Budd's actions, or a reflexive response to what was actually an attack by

---

[10]Deputy Tinkey testified that Budd forced Moore into the chair because he did not comply with the order to "shut the f*** up and sit down." Deputy Oliver, however, did not mention this supposed noncompliance and in fact testified that when Moore was chatting with his codefendants, he did not "attempt physically to do anything that was inconsistent with" what he was told to do, nor did he "disobey orders." Transcript at 119.

Budd on Moore.[11]    In any event, Tinkey immediately took Moore to the ground to secure him. Tinkey then told Moore to remain on the ground and took a few steps back.

Once on the ground, Moore did not move around, did not try to get back up, and did not verbally or physically threaten anyone—Tinkey testified that Moore "wasn't going anywhere" and "wasn't a threat to anyone." *Id.* at 73.  Budd, agitated and cursing Moore, stepped on Moore's back with both feet.[12]    Moore testified that his face was scratched up and his back was "starting to feel numb"; he later unsuccessfully requested medical attention. *Id.* at 108.  Officer Oliver testified that he saw no law-enforcement reason for Budd's actions; Officer Tinkey testified that he did not see "any need" for Budd's actions and that "being obnoxious" is not a reason to use force on a prisoner. *Id.* at 75, 95.  Budd disputed this characterization.  He testified that when he slammed Moore into the window, he "was trying to restore order to a volatile situation," and when he stepped on Moore's back, he was "attempt[ing] to protect himself from injury."  Transcript at 45.

A rational factfinder could have concluded that Budd acted without penological justification and therefore unnecessarily and wantonly inflicted pain on Moore in violation of the Eighth Amendment. *See Hope*, 536 U.S. at 737.  Given the other officers' testimony, the jury reasonably could have seen Budd's supposed justifications as incredible.  That is, Tinkey testified that when Budd slammed Moore into the window, a few minutes had passed since Moore had mouthed off, and that in any event, "being obnoxious" does not justify the use of force.  Moreover, Moore was restrained, compliant, and alone in the room with three officers.  The jury rationally could have disbelieved that this was a "volatile situation."  Similarly, the jury could have disbelieved Budd's supposed concern for his safety when he stepped on Moore's back with both feet, given Tinkey's testimony that the prone, restrained inmate "wasn't going anywhere" and "wasn't a threat to anyone."  Moore's injuries here, which included a dented forehead and numbness to his back, in which a bullet had previously become permanently lodged, were also comparable to those of the inmate in *Hudson*, and thus not *de minimis*.  Therefore, we reject this challenge.

Budd also argues that the trial court should have granted his motion for judgment of acquittal on Count 3 because Moore never identified Budd as the person who assaulted him.  This claim is totally meritless.  Deputy Tinkey, on both direct and cross-examination, identified Budd as the one who assaulted Moore.  Deputy Oliver did the same.  The fact that Moore did not also identify Budd is irrelevant.[13]

## VII.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

---

[11]Deputy Tinkey testified that he didn't know whether Moore was merely startled or whether he was attempting to attack Budd.  Deputy Oliver testified that Budd had actually "jammed [Moore's pants] up into his crotch . . . pretty hard" and "kind of lifted him up" by his pants.

[12]Deputy Oliver testified that Budd actually stepped on Moore's back twice—once before the pants-hiking incident and once after.

[13]Budd's citation to *Thigpen v. Cory*, 804 F.2d 893, 896-897 (6th Cir. 1986), is inapt.  In that case, this court concluded that an eyewitness's line-up identification was unreliable under the five-factor test of *Neil v. Biggers*, 409 U.S. 188 (1972).  This has nothing to do with Budd's claim that the government needed Moore's eyewitness testimony in addition to the eyewitness testimony of two officers.

---

**DISSENT**

---

COOK, Circuit Judge, dissenting.  I concur in all but Part II of the majority's opinion[1] I dissent because I conclude there was a constructive amendment to Count 3—not a mere variance.[1]

In deciding how to distinguish a constructive amendment from a mere variance, the majority favors this court's inscrutable doctrine[2] over clearer commands from the Supreme Court.  Having chosen a framework to decide the issue, the majority misapplies it on its own terms.  Because this topic has troubled this court for years, I offer for consideration my understanding of the doctrine.

Defendants may invoke one of three theories to complain of inconsistencies between the indictment and either the jury instructions, the proof at trial, or both: (1) actual amendment, (2) constructive amendment, or (3) variance.  *See, e.g.*, *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) (identifying these three distinct theories).  The first theory, actual amendment, traces to *Ex parte Bain*, 121 U.S. 1 (1887), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 629–31 (2002).  The grand jury indicted Bain and other bank officials for making false statements "with intent to deceive the comptroller of the currency and the agent appointed to examine the [bank's] affairs."  *Id.* at 4.  Thirteen months later, the prosecution moved the trial court to strike the words "the comptroller of the currency and" from the indictment.  *Id.* at 5.  The trial court granted the motion and struck the language, and Bain was convicted.  The Supreme Court granted Bain's habeas corpus petition, concluding that this rewriting of the indictment ran afoul of the Fifth Amendment's command that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."  *Id.* at 6, 13–14.  Specifically, the conviction could not stand because the grand jury had never considered the government's new theory that Bain had made false statements intending to deceive the agent, but not the comptroller.  *See id.* at 13 ("[A]fter the indictment was changed it was no longer the indictment of the grand jury who presented it.").  The Court reasoned that the grand-jury component of the Fifth Amendment checks overzealous prosecution and ensures that a citizen is not exposed to the risks and expense of a trial unless a grand jury composed of his peers determines that he should.  *See id.* at 12 (citing *Jones v. Robbins*, 74 Mass. (8 Gray) 329 (1857)); *see also United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978) (noting that the most important reason for the rule barring actual and constructive amendments is "the assurance that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination of the defendant's guilt or innocence"); *United States v. Moore*, 129 F.3d 873, 878 (6th Cir. 1997) (citing *Beeler*, 587 F.2d at 342).

The second theory, constructive amendment, is a legal fiction developed after *Bain*—a prosecutor could no longer *physically* rewrite the indictment, but he could still *effectively* rewrite the indictment by leaving its language untouched, but proposing jury instructions that embody a new theory or crime.  This presents the same evil as an actual amendment:  no grand jury passed on the essential description of the crime that ultimately formed the basis for conviction, a circumstance that

---

[1] Because I would reverse based on a constructive amendment to Count 3, I would not reach the issues discussed in Part VI of the majority's opinion.  That said, I agree with the substance of the majority's analysis.

[2] *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002) ("[T]he distinction between a variance and a constructive amendment is sketchy."); *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) ("[T]he distinction between a variance and a constructive amendment is at best 'shadowy . . . .'").

contravenes the Fifth Amendment.[3] Thus, courts developed the legal fiction of a "constructive amendment" to prevent this mischief. In *Stirone v. United States*, 361 U.S. 212 (1960), the seminal Supreme Court case on constructive amendments, the grand jury indicted the defendant under the Hobbs Act[4] for interfering with interstate commerce in sand, but the trial court permitted the government to argue that the defendant interfered with interstate commerce in steel, too, and the defendant was convicted. *Id.* at 213–14. The Supreme Court reversed the defendant's conviction, noting that "[a]lthough the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same." *Id.* at 217. *Stirone* reveals two distinguishing features of a constructive amendment. First, a constructive amendment involves not just a "variation between pleading and proof," *id.*, but also an irregularity in the jury instructions, *see id.* at 219 ("[W]e cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. Yet because of the court's admission of evidence *and under its charge* this might have been the basis upon which the trial jury convicted petitioner." (emphasis added)). Second, a constructive amendment is not amenable to harmless-error analysis. *Id.* at 217 ("Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.").

The third theory, alluded to in *Stirone*, is the variance. *Stirone* makes clear that a variance results when there is a "variation between pleading and proof," *see id.*, but the jury instructions properly mirror the language of the indictment, *see id.* at 215, 217–18 (explaining *Berger v. United States*, 295 U.S. 78 (1935)). In *Berger*, the irregularity came when the prosecution introduced proof of a second conspiracy in addition to the one charged. 295 U.S. at 79–81. The Court questioned whether the variance "affect[ed] the substantial rights" of the defendant, *id.* at 82, and concluded that it did not, *id.* at 83–84. *Berger* confirms that a variance has nothing to do with the defendant's Fifth Amendment grand jury right: the Court never mentioned the concept. Instead, a variance issue turns on whether the defendant (1) has sufficient notice of the allegations to mount a defense, and (2) will be protected against double jeopardy. *Id.* at 82. These lesser concerns require reversal only if the defendant shows prejudice to a substantial right. *Id.*

These three cases demonstrate that distinguishing a constructive amendment from a variance requires review of the jury instructions. When the jury instructions mirror the indictment and the defendant claims only that the proof at trial diverged from the indictment, he can complain only of a variance and must show prejudice. But when the jury instructions do not mirror the indictment—as was true in Budd's case—the defendant's claim is properly categorized under the "constructive amendment" rubric.[5] Although Budd's indictment charged him with violating 18 U.S.C. § 242 by depriving inmate Moore of his Fourteenth Amendment rights, the court instructed the jury to convict if it found that Budd violated 18 U.S.C. § 242 by depriving Moore of his Eighth Amendment rights. In other words, after the government secured an indictment premised on a Fourteenth Amendment deprivation, it switched theories and tried the case—jury instructions and all—based on an Eighth Amendment deprivation. Following this circuit's rule that a constructive amendment is per se prejudicial, *see, e.g.*, *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000) (collecting cases), I would reverse Budd's conviction on this count and remand for resentencing.

---

[3]Of course, correction of a scrivener's error presents no problem. *See, e.g.*, *Russell v. United States*, 369 U.S. 749, 770 (1962) ("[A]n indictment may not be amended except by resubmission to the grand jury, *unless the change is merely a matter of form*." (citing *Bain*, 121 U.S. 1) (emphasis added)).

[4]That statute provided that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion" shall be fined or imprisoned, or both. 18 U.S.C. § 1951(a).

[5]The proof invariably will differ too—after all, the prosecution has to prove its new theory—but this proof aspect is not the crucial distinction.

The majority avoids the three Supreme Court cases I describe above and instead attempts to draw from this court's precedent a principle that "a variance in some cases is not different in kind from a constructive amendment, but merely in degree; if it is serious enough, it *becomes* a constructive amendment."[6]  *Ante* at 3.  For two reasons, I cannot agree.  First, the concepts of "variance" and "constructive amendment" differ in kind, not degree:  either the jury instructions mirror the indictment, or they do not.  The principle identified by the majority likely results from loose language in past cases; that is, labeling what is actually just a prejudicial variance a "constructive amendment."  If the court reverses based only on irregularities of proof, it is because the variance prejudiced the defendant's substantial rights, not because it was a constructive amendment.  Second, the practical implications of a framework where a variance can "rise to the level" of a constructive amendment reveal its flaw.  Presumably, under the majority's framework, the defendant must show that a supposed variance "rose to the level" of a constructive amendment by showing that he was actually prejudiced.  If the defendant must show actual prejudice to get per se treatment, this would eliminate the need for even the *concept* of prejudice per se—every case would turn on whether the defendant had shown "enough" actual prejudice.

The majority ultimately turns to *Martin*, *Prince*, and *Suarez* to decide whether the irregularities in this case represented a variance or a constructive amendment, inquiring "whether the jury instruction and evidence introduced another crime or an 'alternative method[] by which the one crime . . . could have been committed.'"  *Suarez*, 263 F.3d at 478 (quoting *Prince*, 214 F.3d at 758).  It finds a mere variance, concluding that violating Moore's Fourteenth Amendment rights is merely an "alternative method" by which Budd could have violated 18 U.S.C. § 242.  I cannot agree.  Moore was a convicted inmate whose rights against excessive force sound exclusively in the Eighth Amendment,[7] so the only "method" by which Budd could have violated 18 U.S.C. § 242 would have been by depriving Moore of his Eighth Amendment rights against cruel and unusual punishment.  Depriving Moore of Fourteenth Amendment rights against excessive force amounting to punishment—rights that, based on his inmate status, Moore does not even have—simply is not a "method" by which Budd could have violated 18 U.S.C. § 242.[8]

---

[6]I assume the majority traces this principle to cases framing the question as whether a variance "rose to the level" of a constructive amendment.  *See, e.g.*, *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006); *United States v. Barrow*, 118 F.3d 482, 489 (6th Cir. 1997).

[7]*See, e.g.*, *Gravely v. Madden*, 142 F.3d 345, 348–49 (6th Cir. 1998) (noting that *Whitley v. Albers*, 475 U.S. 312 (1986), "made it clear that the legal status of the victim of the excessive force determines whether the Fourth, the Eighth, or the Fourteenth Amendment governs his excessive force claims"); *Pelfrey v. Chambers*, 43 F.3d 1034, 1036–37 (6th Cir. 1995) (noting that after *Graham v. Connor*, 490 U.S. 386 (1989), convicted prisoners may raise excessive-force claims only under the Eighth Amendment); *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) ("Since [convicted prisoner] Cornwell's excessive force claim . . . can only be properly considered under the Eighth Amendment [after *Graham v. Connor*], we hold that the district court erred in submitting this claim of excessive force to the jury under the Fourth Amendment.").

[8]In *Hynes*, this court offered another formulation for distinguishing a variance from a constructive amendment.  The majority mentions *Hynes*, *ante* at 3, but quickly brushes it aside, apparently reasoning that *Hynes* applies only in cases where "the difference between indictment and jury instructions is not the facts of the offense, but the legal theory," *ante* at 3.  Again, I respectfully disagree.  *Hynes* posits that a constructive amendment results "'when an indictment's terms are effectively altered by the presentation of evidence and jury instructions that so modify essential elements of the offense charged that there is a substantial likelihood the defendant [was] convicted of an offense other than that charged in the indictment.'"  467 F.3d at 961–62 (quoting *United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004)).  This clearly seems to cover situations where the inconsistency lies not only in the facts, but also in the legal theory.  And applying this formulation to Budd's case also dictates the conclusion that there was a constructive amendment to his indictment.  The inconsistency between the jury instructions' Eighth Amendment language ("malicious and sadistic" or "unnecessary and wanton") and the indictment's Fourteenth Amendment language ("excessive force that amounts to punishment") plainly modified the *mens rea* element:  it is more difficult to establish that a corrections officer acted "maliciously and sadistically" toward an inmate—who constitutionally may be punished—than to prove that the officer's conduct toward a pretrial detainee "amounted to punishment."  *E.g.*, *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002)

In the last few paragraphs of Part II, the majority appears to dismiss any irregularity in this case by reasoning that the "evidence" or "proof" presented to the grand jury would have been the same whether the indictment had charged an Eighth or Fourteenth Amendment deprivation. *Ante* at 7. I respectfully suggest that by focusing on Budd's actions and ignoring his mental state, the majority misses the point. The grand jury never decided that Budd should stand trial for using "malicious and sadistic" or "unnecessary and wanton" excessive force on inmate Moore. *See Bain*, 121 U.S. at 10–13 (discussing the protection afforded by the grand jury). And although widespread experience suggests that the grand jury was unlikely to tarry over *mens rea* subtleties,[9] the Supreme Court has explicitly forbidden us from speculating on subjects such as whether the grand jury would have indicted Budd for an Eighth Amendment deprivation just as it actually indicted him for a Fourteenth Amendment deprivation. As the Court said in *United States v. Russell*,

> To allow . . . the court[] to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. . . . This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.

369 U.S. 749, 770 (1962) (citing *Bain*, 121 U.S. 1, and *Stirone*, 361 U.S. 212). No grand jury ever concluded that Budd should stand trial for the more-serious level of excessive force that the government needed to prove to the petit jury, and this contravenes the Fifth Amendment. I respectfully dissent.

---

("The question of which amendment supplies Phelps's rights is not merely academic, for the standards of liability vary significantly according to which amendment applies.").

[9]Empirically, the grand jury returns an indictment in the overwhelming majority of cases. *See, e.g.*, *United States v. Navarro-Vargas*, 408 F.3d 1184, 1195 & nn.14–15 (9th Cir. 2005) (en banc). Colloquially, "a grand jury would indict a ham sandwich." *E.g.*, *id.* at 1195.