**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Allen BARNETT, Defendant–Appellant.**

**No. 02–5844.**

United States Court of Appeals,
Sixth Circuit.

Nov. 24, 2003.

Linda Harris, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Stephen B. Shankman, Fed. Public Defender, April R. Goode, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before KENNEDY, GUY, and DAUGHTREY, Circuit Judges.

PER CURIAM.

In this appeal, the defendant, Allen Barnett, challenges the district court's decision to enhance his sentence for obstruction of justice and for abuse of a position of trust. Convicted by a jury of 11 counts of mail fraud, in violation of 18 U.S.C. § 1341, he also contends that his conviction on one of those counts is invalid. We find no reversible error and affirm.

■■ The last of these three issues, involving an alleged insufficiency of the evidence to sustain Barnett's conviction on Count 12 of the indictment, raises the least serious challenge on appeal. That count charges that the offense occurred "[o]n or about December 26, 1997," when, in fact, the offense actually occurred on December 27, 1996. The error was not caught until sentencing. The defendant now claims, with a measurable degree of creativity, that his conviction should be set aside either on the basis of insufficient evidence or invalid constructive amendment to the indictment, citing *United States v. Gatewood*, 173 F.3d 983, 988 (6th Cir.1999), and *United States v. Manning*, 142 F.3d 336, 339 (6th Cir.1998). The government asserts, and we agree, that our review is for plain error only, there having been no timely objection to the defect in the indictment. *See United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). More to the point, we conclude that any error has been waived.

In the first place, the alleged defect is obviously a clerical error. A reading of the indictment reveals that the count in question, Count 12, incorporates by reference Paragraph B of Count 1, which alleges that Barnett engaged in a scheme to defraud during a period between October 1995 and February 1997. Hence, the inconsistency between the dates in Paragraph B of Count 1 and the date in Count 12—December 26, 1997—shows clearly that the mistaken date in Count 12 is a merely typographical error.

The matter of clerical error involving dates in criminal indictments has not been a frequently litigated issue in this circuit. We must reach back to *Goulson v. United States*, 16 F.2d 44, 44–45 (1926), to find authority for what common sense would seem to dictate.[1] In that case, the offense in question was mistakenly charged as occurring one month after the date on which the indictment was filed, but the court found that "inaccuracies and defects in form, not affecting the substantial rights of the accused, are waived by failure to call them to the attention of the court below by proper motion." Because the date "was not of the essence of the offense," "the offending act was proved," and the defendant "was not misled or prejudiced by the erroneous statement of date," the court found against the defendant and upheld the validity of the indictment. *Id.*

Barnett suffered no prejudice as a result of the typographical error in Count 12 and,

---

1. More recent case law supports the same conclusion that this court reached in *Goulson*. Although "an indictment may not be 'amended except by resubmission to the grand jury,'" "variations from the charges that are 'merely a matter of form'" are not amendments requiring resubmission to the grand jury. *United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir.1991) (quoting *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). "Unless the particular date is an important element of the charged offense," "a formal change to the date specified in the indictment (or proof or instructions that the charged crime was committed on a different date than the indictment alleges) will not impermissibly amend the indictment—so long, in general, as the evidence shows that the offense was the one charged and that it was committed on a date before the indictment and within the statute of limitations." *Leichtnam*, 948 F.2d at 376 (citing *United States v. Leibowitz*, 857 F.2d 373, 378–79 (7th Cir.1988)).

in fact, did not even bring the matter to the court's attention until the sentencing hearing. The date was neither an essential nor a material element of the offense charged, and there is no question raised involving the statute of limitations. Finally, the defect did not affect Barnett's substantial rights or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. From all of this, we can only conclude that the error in question was waived under *Goulson*. In any event, we hold that the district court did not commit reversible error in declining to set aside Barnett's conviction on Count 12.

Barnett's conviction on that count and the others resulted from a 1988 FBI investigation of Terry Penna, the owner of a Memphis automobile body shop, based on allegations that Penna and defendant Barnett were involved in a fraudulent scheme to defraud Permanent General Insurance Company. Barnett worked for Permanent General as an appraiser, engaged in estimating the amount of property damage in filed claims and reporting that estimate to the Permanent General adjuster investigating the claim. In justifying property estimates, an appraiser was required to take photographs of damaged vehicles and ensure that body shops obtain used parts instead of new parts when appropriate. After a Permanent General appraiser turned in his estimate, the company would issue a check for the damage amount from its Nashville office, sending the check by regular United States mail. Barnett worked as a supervisor in Permanent General's Memphis branch office from 1991 to 1995, and then as a senior appraiser from 1995 until February 1997. As a senior appraiser, he was responsible for office productivity, performing appraisals, office assignments, and distribution of the workload.

According to Terry Penna's testimony, shortly after Penna opened his body shop in 1995, Barnett wrote an extremely "padded" estimate for Penna and explained to Penna that he could write bogus estimates because "nobody was looking over his shoulder." Barnett taught Penna how to position a vehicle to make the damage look more severe. On multiple occasions, Barnett called Penna to tell him that he was coming to do an estimate, and Penna paid Barnett around $500 to submit an inflated estimate. In some instances, Penna even prepared the estimate ahead of time. Additionally, Penna and Barnett prepared false supplemental claims that were submitted to Permanent General.

Each of the counts of the indictment charged a separate incident in which Barnett submitted a fraudulent estimate that caused Permanent General to send a check for damages in an amount that was inconsistent with the actual damage to the vehicle. For example, Count 12, discussed at some length above, related to Denesa Pleasure's claim for damage to her vehicle. Her claim was filed on December 7, 1996, and Barnett appraised the damage at $4,702.32. Permanent General issued a check for this amount less the $500 deductible. A later reinspection revealed the damage was actually $914.83. Penna paid Barnett $500 for submitting the false estimate.

Barnett testified in his own defense at trial, denying that he wrote inflated estimates, that he and Penna prepared supplemental claims, that he assigned himself all claims from Penna's shop, or that he accepted money from Penna in exchange for writing fraudulent estimates. It was on the basis of this testimony that the district court later applied a sentencing enhancement for obstruction of justice, finding that the testimony involved perjury on the part of the defendant. There was, however, a

complicating factor at sentencing: the judge who tried the case before the jury that convicted Barnett was not available at the time of the defendant's sentencing hearing, and a different district judge presided at that time.

The pre-sentencing report suggested to that judge that the defendant was subject to sentencing under § 3C1.1 of the Sentencing Guidelines, which authorizes a two-level enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense...." U.S. Sentencing Guidelines Manual § 3C1.1 (2001). The enhancement is properly applied if a defendant commits perjury, but not if the defendant gives inaccurate testimony or statements that result from confusion, mistake, or faulty memory. *See* U.S. Sentencing Guidelines Manual § 3C1.1, nn. 2 & 4 (2001); *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (holding that perjury occurs when a witness, testifying under oath or affirmation, "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory"). In *Dunnigan,* the Supreme Court held that in order to protect a defendant who is found guilty from a § 3C1.1 enhancement simply for having testified on his or her own behalf, the sentencing court must review the evidence and make independent findings addressing each element of the perjury in a separate and clear finding. *Id.* at 95. Alternatively, the sentencing court may conclude that the enhancement is appropriate on the basis of a finding of obstruction of justice that encompasses all the factual predicates of perjury. *Id.*

In applying *Dunnigan,* we have held that a district court must do two things: (1) identify those particular portions of the defendant's testimony that it considers to constitute perjury, and (2) " 'either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury.' " *United States v. Mise,* 240 F.3d 527, 531 (6th Cir.2001) (quoting *United States v. Sassanelli,* 118 F.3d 495, 501 (6th Cir.1997) (internal citations omitted)). These requirements protect defendants who testify at trial by providing a meaningful record to determine which statements the district court considered to constitute perjury and whether the court found those statements to satisfy each element of perjury. *See Sassanelli,* 118 F.3d at 501. A district court's findings will be adequate if the record is sufficiently clear to indicate which statements the district court considered perjurious and to reflect the court's finding that the statements satisfied each element of perjury. *See United States v. Lawrence,* 308 F.3d 623, 632 (6th Cir.2002).

■ In this case, the district court set out the relevant legal determinations necessary to a finding of deliberate perjury and referred specifically to the enumeration of perjurious statements that were set out in the presentence report, observing:

It appears from reading the testimony, and admittedly I did not preside over the trial, but in looking at that conduct there's statements in there that—that give the clear indication that the—that the answers were given in a manner calculated to mislead the trier of fact or to create a version of facts that do not support what—what really actually occurred.

So it does appear to me that the defendant gave testimony that was designed

910

to mislead the jury and avoid the possibility of the jury reaching the result it did.

So I think the probation office has appropriately included the points, and I would deny that particular objection based upon my review of the transcript portions that have been submitted to the court for review.

Doubtless, the district judge's findings could have been fuller, but under the circumstances of this case, we conclude that the record is sufficient to sustain the imposition of the enhancement without a remand that would require the district judge simply to read into the record the instances of obvious perjury set out in the presentence report. We therefore hold that any deficiencies in the sentencing hearing related to the enhancement of the defendant's sentence for obstruction of justice are formalistic in nature and that resentencing on this basis is not required.

■ Nor do we find that the district court erred in the imposition of a sentencing enhancement for abuse of a position of trust. We review the district court's application of Sentencing Guideline § 3B1.3 under the "clearly erroneous" standard when the application is fact-bound, as it is here. *See United States v. Lang,* 333 F.3d 678, 682 (6th Cir.2003).

Section 3B1.3 provides for a two-level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S. Sentencing Guidelines Manual § 3B1.3 (2001). Application note 1 explains that the term "public or private trust" refers to a position "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." U.S. Sentencing Guidelines Manual § 3B1.3, n. 1 (2001). It further states that for this enhancement to apply, the position "must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." *Id.* The application notes go on to distinguish, for example, the embezzlement of a client's funds by an attorney serving as guardian (a situation in which the enhancement would apply) from embezzlement or theft by an ordinary bank teller or hotel clerk (situations to which the enhancement would not apply, because these positions are not characterized by the requisite discretion).

As we have previously emphasized, "the touchstone for a finding that the defendant occupies a position of trust is not necessarily the amount of supervision the person receives, although that is an important factor to consider, but rather the amount of discretion the person has in his or her position of employment." *United States v. Hodge,* 259 F.3d 549, 556 (6th Cir.2001). "[T]he rationale for the sentencing enhancement at issue here is virtually analogous to the type of punishment routinely administered for violating a fiduciary duty, which involves a higher duty than is placed upon persons that do not occupy positions of trust." *United States v. Gilliam,* 315 F.3d 614, 618 (6th Cir.2003).

In this case, the presentence report suggested application of the adjustment for abuse of position of trust because the defendant was the manager of the Memphis Permanent General office and had an exclusive arrangement with Penna's shop in which he was the only person from the Permanent General office who could appraise car damage estimates at Penna's shop. The report concluded that "it appears that the defendant had substantial discretionary judgment that was given considerable deference." The district

judge noted that the defendant occupied "a managerial role which allowed him to avoid the supervision and oversight" and found that it "[wa]s significant as a—as a manager, as a supervisor of personnel, significant trust was reposed in him, [and that] therefore he was not subject to the same level of scrutiny that line appraisers would be subject to, if you will, and that very position allowed him to conduct activities with at—without the scrutiny that perhaps some subordinate employees or lesser employees would have been ... subject to."

It thus appears that the district court based the enhancement on the defendant's position within his company and not on the use of any special skill. We conclude that the record supports this decision. Officers of Permanent General testified that Barnett was the senior appraiser who was responsible for office assignments, workload distribution, and performance reviews, as well as for assessing the amount of damages in filed claims. Hence, the record reflects that Barnett exercised a high degree of discretion and enjoyed substantial autonomy in his position, both of which are significant factors in determining whether application of the § 3B1.3 enhancement was proper. His status as a senior appraiser made his fraudulent estimates more difficult to detect, and his authority facilitated the crime. In this respect, the facts in this case resemble those recently reviewed in *Lang*, 333 F.3d at 683, in which we found an abuse-of-trust enhancement proper where the defendant's position allowed her the discretion to hire independent companies and to submit their invoices without anyone overseeing her transactions. They also resemble those reviewed in *Hodge*, 259 F.3d at 556, in which we held that certain health care providers occupied a position of trust with respect to insurance companies where they exercised professional or managerial discretion in treating patients and in billing

for those treatments, because that discretion was given deference by the insurers and helped to facilitate the crime. We therefore conclude that in this case, it was not clearly erroneous for the district court to apply the abuse-of-trust enhancement, in view of the undisputed facts surrounding the nature of the defendant's managerial position with Permanent General.

For the reasons set out above, we AFFIRM the defendant's conviction and the sentence imposed by the district court.