NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0303n.06

No. 17-3468

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 15, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| MARK ANTHONY BROWN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SILER and LARSEN, Circuit Judges; BLACK, District Judge.*

LARSEN, Circuit Judge. A jury found Mark Brown guilty of possessing cocaine base, in violation of 21 U.S.C. § 844(a). He appeals his conviction, contending that the trial court allowed an impermissible amendment to the indictment, that the jury lacked sufficient evidence to convict, and that the trial court erroneously permitted expert testimony from a lay witness. Brown also appeals his eighteen-month sentence, arguing that he should not have received an enhancement for a prior drug offense because the government failed to comply with the procedural requirements of 21 U.S.C. § 851(a). We AFFIRM Brown's conviction and his sentence.

---

* The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

In 2015, Columbus police arrested Brown in his home after receiving a phone call about an altercation there. While sweeping the house for other occupants, officers noticed several items in plain view atop a coffee table, some ten feet from the front door: a digital scale, an open box of plastic sandwich bags, and approximately one gram of crack cocaine in a plastic sandwich bag. After obtaining a warrant to search the home for evidence of drug trafficking, police recovered opened mail addressed to Brown, also located on the living room coffee table, as well as weapons, ammunition, and drug paraphernalia found throughout the house.

Brown was charged with possessing cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The indictment identified a prior Ohio conviction for drug trafficking as the predicate offense for the latter charges.

On the first day of trial, the court granted the government's request to correct the offense date in the indictment, which mistakenly identified the day of Brown's arrest as "on or about May 16, 2015," rather than June 19, 2015. Brown argued that the correction would prejudice his constitutional rights, but the court disagreed, observing that the offense date proved by the evidence need be only "reasonably near" the date given in the indictment, as "on or about" preceded the date presented to the grand jury. The court accordingly instructed the jury that the government was obliged to prove that Brown committed the alleged crimes "on or about June 19," and explained that "on or about" means "reasonably close to."

Just before closing arguments, defense counsel asked the court to allow the jury to consider the lesser included offense of simple drug possession, 21 U.S.C. § 844(a), as an alternative to

possession with intent to distribute. The judge agreed, and the jury found Brown guilty of simple possession alone.

A conviction for simple possession carries a maximum sentence of one year's imprisonment, but a prior drug conviction can boost that to two years if the government seeks a recidivism enhancement. 21 U.S.C. § 844(a). In its post-trial sentencing memorandum, the government expressed its intent to pursue the enhancement, with Brown's prior state drug conviction serving as the predicate offense. In his response memorandum, and again at the subsequent sentencing hearing, Brown argued that the government's failure to file a pretrial information announcing its plans to seek the enhancement, as 21 U.S.C. § 851(a) requires, foreclosed the increased penalty. The district court rejected this argument, concluding that Brown had been given reasonable notice of the possible enhancement, as well as an opportunity to be heard on the subject. It sentenced him to eighteen months' imprisonment.

## II.

Brown first claims that the district court allowed an impermissible amendment to the indictment. We review that claim de novo. *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998). An amendment manifests "when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) (citation omitted). If "the charging terms of an indictment are effectively altered, the accused is held answerable for a charge not levied through the protective device of a grand jury." *Id.* This abrogates the Fifth Amendment's guarantee of a grand jury's indictment, as well as the two additional constitutional rights that this guarantee safeguards: fair notice of criminal charges, and security from double jeopardy. *United States v. Combs*, 369 F.3d 925, 935 (6th Cir. 2004).

But not every change to an indictment implicates the Fifth Amendment. An alteration that "is merely a matter of form" and does not affect the document's charging terms, does not violate the Constitution. *Russell v. United States*, 369 U.S. 749, 770 (1962) (noting that this is "the settled rule in the federal courts"). An adjustment to the indictment's offense date is "merely a matter of form," *id.*, where the offense date is not "an important element of the charged offense," the "evidence shows that the offense was the one charged," and the evidence demonstrates that the defendant committed the charged offense "on a date before the indictment and within the statute of limitations," *United States v. Barnett*, 89 F. App'x 906, 907 n.1 (6th Cir. 2003) (per curiam) (quoting *United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir. 1991)); *see United States v. Rosenbaum*, 628 F. App'x 923, 929 (6th Cir. 2015) (upholding the correction of an indictment's offense date from April 2008 to August 2007 because the wrong date was "a clerical error" and the defendant had notice of the correct date).

Here, the district court adjusted the indictment's offense date by thirty-five days, from "on or about May 16, 2015," to "on or about June 19, 2015." This is a mere change of form not affecting the indictment's charging terms. The precise date on which the police arrested Brown and found the cocaine is not "an important element of the charged offense." *Barnett*, 89 F. App'x at 907 n.1. The correct offense date preceded the indictment, and no statute-of-limitations issue is in play. *See id.* All the evidence presented at trial concerned the right date, June 19, including the testimony of each witness who described the events of that day. *See id.*

Brown received ample notice of the correct date through the testimony presented at a pretrial evidentiary hearing, as well as what his counsel described as "a significant amount of discovery identifying the June date." Thus, the alteration of the offense date neither affected the

indictment's charging terms nor implicated Brown's right to fair notice of the charges against him. *See Combs*, 369 F.3d at 935.

## III.

At the close of the government's proof, and again at the end of the trial, Brown moved for acquittal, arguing that the government had not established actual or constructive possession of the cocaine found in his house. On appeal, Brown persists that the jury had insufficient evidence to find him guilty of simple drug possession—a claim we review de novo. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

When determining whether the government met its burden of proof, we view the evidence "in the light most favorable to the prosecution." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We recall that the jury "may draw any reasonable inferences from direct, as well as circumstantial, proof." *Id.* Indeed, "[c]ircumstantial evidence alone" can provide a sufficient buttress for a conviction. *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)). We will uphold the jury's verdict if we conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tocco*, 200 F.3d at 424 (quoting *Jackson*, 443 U.S. at 319).

To establish simple possession under 21 U.S.C. § 844, the government was obliged to prove beyond a reasonable doubt that Brown "(1) knowingly or intentionally, (2) possess[ed], (3) a controlled substance." *United States v. Colon*, 268 F.3d 367, 375 (6th Cir. 2001). Possession "need not be exclusive" and may be constructive, meaning that the defendant "knowingly ha[d] the power and the intention at a given time to exercise dominion and control over" the controlled substance. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010) (quoting *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005)).

Here, the evidence established that, while Brown was not the leaseholder of the house in which the police found the cocaine, he paid the rent and lived there full time. Three other people also lived there and had access to the common areas. When police entered the house, Brown was the only person home, other than his then-girlfriend, who was upstairs and appeared "kind of passed out," unable to stand or "really talk." Police noticed the cocaine atop a coffee table in the living room, about ten feet from the front door where they met Brown. On the table alongside the drugs were several letters, opened and addressed to Brown.

Brown contends that his mere residence in the house, and the cocaine's location beside his personal mail, is inadequate to support a possession conviction, but "[c]ircumstantial evidence alone" can be enough for a rational jury to find the elements of a crime beyond a reasonable doubt. *Spearman*, 186 F.3d at 746. Here, a rational jury could draw the inference that Brown had "the power and the intention at a given time to exercise dominion and control" over the cocaine. *Jenkins*, 593 F.3d at 484 (quoting *Hadley*, 431 F.3d at 507). We have frequently upheld guilty verdicts where, as here, no direct evidence tied the defendant to drugs, but the defendant lived in or had unlimited access to the place in which police spotted drugs in plain sight. For example, we have found sufficient evidence to uphold possession convictions where drugs were located in plain view in the apartment the defendant "occupied and controlled," *United States v. Carter*, 486 F.2d 1027, 1028 (6th Cir. 1973) (per curiam); where drugs were located in plain sight in an apartment that the defendant had just exited, outside of which he sold drugs and to which he had unlimited access, *United States v. Gibbs*, 182 F.3d 408, 424–25 (6th Cir. 1999); and where drugs were interspersed with the defendant's personal papers in the house where he lived part time, *Jenkins*, 593 F.3d at 484.

Brown protests that other people had access to the house, so he was not the sole possible owner of the cocaine. But it was not the prosecution's burden to prove him so, as shared possession is also culpable. *See Hadley*, 431 F.3d at 507. Alternative culprits existed in *Carter*, *Gibbs*, and *Jenkins*, too. Yet, in those cases, we held that a rational jury could reasonably infer constructive possession from evidence that the defendant had "[u]nlimited access to a particular area" in which the police found drugs "in plain sight." *Gibbs*, 182 F.3d at 424–25 (citing *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)). So too here.

## IV.

Brown next argues that Robert Vass, a Columbus police officer whom the government called as a lay witness under Federal Rule of Evidence 701, improperly offered expert testimony. We review the district court's admission of Officer Vass's testimony for plain error, as defense counsel did not object at trial.[1] *United States v. Warman*, 578 F.3d 320, 345 (6th Cir. 2009). For us to find plain error, Brown must show the occurrence of an obvious or clear error that affected his substantial rights and the trial's fairness, integrity, or public reputation. *Id.* In order to show that the error affected his substantial rights, Brown must show that the error was prejudicial, "which means that there must be a reasonable probability that the error affected the outcome of

---

[1] Although Brown insists that defense counsel did object at trial, the record belies this assertion. The government initially sought to introduce Officer Vass as an expert witness, to which defense counsel successfully objected because the government had not complied with the disclosure requirements of Federal Rule of Criminal Procedure 16. The parties then agreed at sidebar that Officer Vass would testify as a lay witness. Defense counsel stated, "Then our only concern is that [the government] would stay within the restrictions under 701 and not go beyond that and cross into 702." The court concluded the sidebar by advising defense counsel, "[I]f there is an objection, . . . you will let me know, and we will discuss it at side-bar." Officer Vass testified at some length. At no point did defense counsel object that the nature of his testimony exceeded the scope of a lay witness.

the trial." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *United States v. Olano*, 507 U.S. 725, 734–35 (1993)).

A non-expert witness's opinion testimony "is limited to" those opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. When an officer gives "opinions that rely on the agent's specialized training as a law enforcement officer," as opposed to "personal knowledge of a particular investigation," he gives expert testimony. *United States v. Kilpatrick*, 798 F.3d 365, 384 (6th Cir. 2015). We have said that police testimony that draws on extensive training and experience to describe the practices of drug traffickers and identify artifacts common to the drug trade constitutes "specialized knowledge" exceeding the average juror's experience. *United States v. Lopez-Medina*, 461 F.3d 724, 742–44 (6th Cir. 2006); *see also United States v. White*, 492 F.3d 380, 403–04 (6th Cir. 2007) (holding that investigators gave expert testimony where they explained exhibits of which the "average lay person would be incapable of making sense," using "specialized knowledge acquired over years of experience" to "clarify and link together [evidence] on the basis of the 'reasoning process' employed daily in their highly specialized jobs" (citation omitted)).

At trial, Officer Vass testified to his extensive experience investigating drug trafficking as an officer with the Columbus Division of Police's gang unit. He related that he has orchestrated "[h]undreds" of controlled drug buys to gain intelligence on trafficking operations and is accordingly familiar with cocaine's appearance and packaging, as well as the weight and price of one hit. Officer Vass also testified to traffickers' frequent use of digital scales, such as the one found beside the cocaine in Brown's home, to measure out cocaine for sale. Officer Vass explained

how to cook crack cocaine using baking soda, which officers also found in Brown's house, as well as how to smoke cocaine utilizing scouring pads and pen stems such as those police seized from the home. And Officer Vass noted that traffickers often require their buyers to smoke the product in the place of sale to avoid detection.

Assuming that these statements plainly constituted expert testimony, Brown has not shown that their admission affected his substantial rights. *See Marcus*, 560 U.S. at 262. Officer Vass's testimony, from his extensive experience in narcotics investigations, as to how traffickers cook, smoke, weigh, package, and price crack cocaine—as well as how drug traffickers commonly use the equipment found in Brown's residence to accomplish these ends—manifestly related to the trafficking charge of which the jury *acquitted* Brown. The jury convicted Brown of simple possession alone. And Officer Vass provided no evidence relevant to that charge. He did not testify as to whether Brown had "[u]nlimited access" to the home, for example, or whether Brown paid rent, or had to walk past the cocaine "in plain sight" to meet the arresting officers at the door. *Gibbs*, 182 F.3d at 424–25 (citing *Kincaide*, 145 F.3d at 782). Officer Vass could not have so testified because, unlike the government's other police witnesses, he did not participate in the search of the home, interview its occupants, or even enter until the officers had already removed Brown. As Officer Vass's testimony could have played no role in Brown's simple possession conviction, Brown cannot show that the testimony's admission constituted plain error.

V.

Finally, we review de novo Brown's contention that he is entitled to resentencing because the government failed to comply with the notice provisions of 21 U.S.C. § 851(a) before seeking a sentence enhancement. *United States v. Boudreau*, 564 F.3d 431, 436 (6th Cir. 2009). Brown's conviction for simple possession of cocaine base carries "a term of imprisonment of not more than

1 year"; but where the defendant has a prior drug conviction, the statute imposes a mandatory minimum of fifteen days and raises the maximum to two years. 21 U.S.C. § 844(a). The court may not impose this increased sentence "unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." *Id.* § 851(a)(1). After a guilty verdict, the court must ask the defendant to affirm or deny the prior conviction, and inform him that any challenge to that conviction's validity must precede imposition of sentence. *Id.* § 851(b).

Here, it is undisputed that the government did not, prior to trial, file a § 851 information announcing its intent to seek an enhancement and indicating the predicate conviction to support it. The government contends that a recidivism enhancement would not have made sense for the charge on which Brown went to trial: drug trafficking under 21 U.S.C. § 841(b)(1)(C). Unlike simple possession under § 844, drug trafficking under § 841(b)(1)(C) does not impose a mandatory minimum when the defendant has a prior drug conviction; the statute instead boosts the maximum sentence from twenty to thirty years. The government explains that it did not file a pretrial information because it did not plan to seek the maximum sentence, let alone a ten-year enhancement—indeed, the government observes that Brown's realistic Guidelines range on the trafficking charge was merely twenty-seven to thirty-three months.

The monkey wrench materialized immediately before closing arguments, when Brown successfully requested that the court charge the jury to consider the lesser included offense of § 844 possession, the only charge on which Brown was convicted. In its subsequent sentencing memorandum, filed with the court and served upon Brown, the government announced that it would seek twenty-one months' imprisonment, and indicated that Brown's Ohio drug

-10-

conviction—previously included in the indictment as the predicate felony for the weapons charges—would serve as the predicate conviction for the enhanced penalty. Brown contends that this was too little, too late for compliance with the mandatory notice requirements of § 851(a).

This court's jurisprudence has traditionally "emphasized 'the importance of interpreting § 851's notice requirements so as to avoid elevating form over substance.'" *United States v. Layne*, 192 F.3d 556, 576 (6th Cir. 1999) (quoting *United States v. King*, 127 F.3d 483, 489 (6th Cir. 1997)). It is "well-settled precedent in this Circuit and its sister circuits that section 851 'was designed to satisfy the requirements of due process and provide the defendant with reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism.'" *United States v. Pritchett*, 496 F.3d 537, 548 (6th Cir. 2007) (quoting *King*, 127 F.3d at 489). We have held that the "proper inquiry" in evaluating the government's compliance with § 851 is whether the defendant had the benefit of this "substance." *King*, 127 F.3d at 488–89. So long as the defendant had reasonable notice of the government's intent to rely on a particular conviction to seek an enhancement, as well as the opportunity to contest the enhancement, we have regularly affirmed enhanced sentences despite the government's fumbling of the § 851(a) requirements. *See, e.g.*, *United States v. Kelsor*, 665 F.3d 684, 699–700 (6th Cir. 2011) (holding that errors in the § 851 information did not deprive the defendant "of reasonable notice or a meaningful opportunity to be heard," and noting that the defendant did not contest the validity of the predicate conviction itself); *Boudreau*, 564 F.3d at 436–38 (holding that the government's failure to docket a § 851 information did not demand resentencing where the defendant received actual notice that he was subject to an enhanced penalty); *Pritchett*, 496 F.3d at 548 (holding that the government's failure to file a § 851 information before the guilty plea did not require resentencing where the defendant did "not dispute that he had notice" of a possible

enhancement or "that he had an opportunity to challenge the validity of his prior convictions"); *Layne*, 192 F.3d at 575–76 (affirming the sentence despite errors in the § 851 information, because the defendant did "not contend that it failed to provide him with adequate notice of prior convictions" or show that it denied him a "reasonable opportunity to be heard").

*United States v. Williams*, 899 F.2d 1526, 1529 (6th Cir. 1990), one of the exceedingly rare instances in which we have remanded for resentencing because of a § 851 problem, presents a counterexample. There, until the imposition of sentence, the defendant "had absolutely no notice of [the possibility of] an enhanced sentence" for a prior conviction—he did not even "know that the government considered him a prior felony offender." *Id.* at 1527, 1529. To make matters worse, the defendant argued that the predicate conviction for the enhancement did not constitute a valid "conviction" under the relevant state's law—but he did not receive an opportunity to contest that conviction's validity before it was too late. *Id.* at 1529 n.3.

Unlike the successful claimant in *Williams*, Brown cannot argue that the government's failure to file a pretrial information deprived him of the "substance" § 851 requires. *Layne*, 192 F.3d at 576 (quoting *King*, 127 F.3d at 489). He does not argue, for example, that he was surprised that the government knew of his earlier drug conviction, and made outcome-altering decisions on that basis. Brown could not so argue, of course, because his prior conviction was included in the indictment as the predicate for the weapons charges on which he went to trial. Neither does Brown argue that he lacked the opportunity to challenge the old conviction's validity, or to otherwise contest the enhancement. Nor could he. First, the presentence investigation report (PSIR) listed Brown's prior drug conviction as specified in the indictment, and indicated that Brown's priors rendered him eligible for an enhanced sentence under the terms of § 844. Second, the government's sentencing memorandum informed Brown that the government was seeking an

enhanced penalty, and reiterated the predicate conviction. Brown's counsel objected to the PSIR's maximum-penalty calculation, filed a responsive sentencing memorandum arguing against the government's proposed enhancement, and continued vigorously contesting the matter at the sentencing hearing. This is not a case in which the defendant lacked "reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence." *Boudreau*, 564 F.3d at 438 (quoting *Pritchett*, 496 F.3d at 548). Our cases are explicit that these are "all that due process and Section 851(a) require." *Id.* Because this is what Brown received, we affirm his sentence.

We note that there is another way to look at the matter, too, apart from this court's customary, purpose-based approach to the interpretation of § 851. It stems from the "well-established principle" that, while a defendant is entitled to fairness, he is not entitled to perfection—and will rarely experience it, as "error-free" proceedings are "not humanly possible." *United States v. Segines*, 17 F.3d 847, 851 (6th Cir. 1994) (quoting *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Congress accordingly requires us to review most kinds of error for harmlessness. 28 U.S.C. § 2111 mandates: "On the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." Federal Rule of Criminal Procedure 52(a) similarly provides: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

Brown's argument all along has been simply that the government is bound to follow the letter of § 851, no matter what. It did not do that here; therefore, Brown demands relief. Our cases interpreting § 851 have not taken this approach to the problem, looking instead to whether the statute's purpose has been satisfied. But even an approach more focused on the text would not

give Brown the relief he seeks.  For even if the government had failed to comply with § 851, the

harmless-error statute and the rules that bind this court would oblige us to "disregard[]" the error

unless Brown could demonstrate prejudice.  28 U.S.C. § 2111; Fed. R. Crim. P. 52(a).  He could

not do so, for the same reasons we outlined above.  Brown knew the government was aware of his

prior conviction.  Once the government decided to seek an enhancement based on that conviction,

he received reasonable notice of that intention.[2]  Brown has not contended that the conviction was

an invalid basis for enhancement.  He did not lack opportunity to make his case against an

enhanced sentence before the trial court.  He certainly could not posit that, if only the government

had dotted its i's and crossed its t's, he would *not* have received an enhancement.  There could be

no harm to Brown's substantial rights on these facts.  *See United States v. Hill*, 142 F.3d 305, 313

(6th Cir. 1998) (holding that the district court's failure to engage the defendant in a § 851(b)

colloquy was harmless error, because the defendant did not contest the validity of his prior

convictions, despite repeated opportunities to do so).  Brown's claim would accordingly fail under

harmless-error analysis just as it does under our cases interpreting the requirements of § 851.[3]

---

[2] Granted, Brown did not receive notice before trial—but how could he, seeing that the government had no reason to seek the enhancement until after Brown himself moved for the jury to consider a new charge?  Brown suggests that, if the government wanted to ensure the possibility of a sentence over twelve months, it should have filed a § 851 information before trial *just in case* Brown later asked the court to charge the jury to consider the lesser included offense of simple possession. Certainly, the government could have done so.  It could even do so as a matter of course.  But this move would result in routine increased sentencing exposure for defendants—here, it would have raised Brown's maximum sentence on the trafficking charge by ten years—even in cases, like this one, in which the government did not believe such exposure warranted.

[3] Brown argues that a failure to comply with § 851 would constitute structural error.  But the Supreme Court has recognized a small set of errors that fall into this category.  They are characterized either by the Court's inability to gauge their effect on the outcome, or by the Court's certainty that such errors will almost always adversely affect the outcome, such that it is not efficient to conduct the analysis.  *See Arizona v. Fulminante*, 499 U.S. 279, 307–10 (1991) (explaining that errors whose effect may "be quantitatively assessed in the context of other evidence" are subject to review for harmlessness, as opposed to "structural defects" whose "evidentiary impact" "def[ies] analysis by 'harmless-error' standards"); *see also Neder v. United*

* * *

For the foregoing reasons, we AFFIRM Brown's conviction and sentence.

---

*States*, 527 U.S. 1, 7–8 (1999) (recognizing that harmless-error analysis does not apply to errors "so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome").  A failure to comply with the notice requirements of § 851 fits neither category:  we are able to determine whether a defendant was harmed by a failure to receive a § 851 notification before trial, and the incidence of harm is not so overwhelmingly frequent that it is not worth making the assessment.